[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10165

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

*versus*

B. G. G.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cr-80063-DMM-1

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LUCK, Circuit Judge:

Federal Rule of Criminal Procedure 48(a) allows the government to dismiss an information (or indictment) before trial with "leave of court." But, because "[f]ew subjects are less adapted to judicial review than the exercise by the [e]xecutive of his discretion in deciding . . . whether to dismiss a proceeding once brought," *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) (Burger, J.), the district court's discretion to grant or deny "leave" under rule 48(a) is limited. The district court must presume that the government moved to dismiss the information in good faith. The district court must find, to overcome the good-faith presumption, that the government acted in bad faith in moving to dismiss the information. The district court must still dismiss the information, if the good-faith presumption has been overcome, where the government's reasons for dismissal do not go to the merits and do not demonstrate a purpose to harass. And the district court's dismissal (before trial) must be without prejudice and cannot bar a future prosecution.

The question in this case is whether the district court abused its limited discretion when it granted "leave" to dismiss the information against B.G.G. with prejudice. We conclude that it did. The district court did not presume the government moved to dismiss the information in good faith. It did not find bad faith by the government. It did not focus its analysis on whether the government's reasons for dismissal went to the merits or demonstrated a

purpose to harass. And it did not dismiss the information without prejudice. Because of these errors of law, we vacate the dismissal order and remand for further proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*The statute of limitations and rule 48(a)*

Two statutes and two rules of criminal procedure are important to understanding the government's appeal. So we discuss them first before getting on to the facts.

The statute of limitations for prosecuting federal crimes provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). But there are exceptions to the five-year limitations period, and this is one of them:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand

> jury is convened, which new indictment shall not be
> barred by any statute of limitations.

*Id.* § 3288.

This case involves an information. For an information, Federal Rule of Criminal Procedure 7(b) provides that an "offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b). If the government moves to dismiss the information before trial, it must comply with rule 48(a), which allows the government, "with leave of court," to "dismiss an indictment, information, or complaint." *Id.* R. 48(a).

### The information

In early 2020, the operation of the federal courts, like just about everything else in the United States and around the world, was disrupted by the COVID-19 pandemic. On March 26, 2020, the United States District Court for the Southern District of Florida suspended all grand jury sessions in response to the pandemic. *See* S.D. Fla. Admin. Order 2020-22. And, on August 11, 2020, the

suspension was extended to January 4, 2021.[1] *See* S.D. Fla. Admin. Order 2020-53.

On August 28, 2020, while the administrative order suspending grand jury sessions was still in effect, the government filed a sealed two-count information against B.G.G.  The information charged B.G.G. with conspiring to accept kickbacks for prescribing opioids from August 2012 through August 31, 2015, in violation of 18 U.S.C. section 371, and with soliciting and receiving kickbacks for prescribing opioids on August 31, 2015, in violation of 42 U.S.C. section 1320A-7B.  Both counts had the same five-year limitations period, which was set to run out on August 31, 2020.  The government filed the information three days before the statute of limitations expired.

The government gave a copy of the sealed information to B.G.G.'s counsel on August 31, 2020.  But B.G.G. refused to waive prosecution by indictment under rule 7(b).

*The government's motion to dismiss the information*

In response to B.G.G.'s refusal to waive prosecution by indictment, the government filed a proposed "order of dismissal." The district court construed the proposed order as a rule 48(a) motion to dismiss the information.  The government explained that

---

[1] In October 2020, the district court amended the August 2020 order and directed that, as of November 16, 2020, it would allow two grand jury proceedings per week.  *See* S.D. Fla. Admin. Order 2020-76.

because of the grand jury suspension, and because of concerns about the statute of limitations expiring, it "institute[d]" the information "within the meaning of" section 3282(a). The government's intent was to dismiss the information and later seek to indict B.G.G. once the grand jury reconvened, as provided by the tolling provision of section 3288. The government argued that it was acting in good faith "to protect against the running of the statute of limitations." B.G.G. wouldn't be prejudiced by the dismissal, the government maintained, because he could raise a statute of limitations defense if he was ultimately indicted.

B.G.G. didn't oppose the government's motion to dismiss; rather, he agreed "that the information should be dismissed" because he didn't consent to it. "The only dispute in this case," B.G.G. explained, was whether the information "should be [dismissed] with or without prejudice."

B.G.G. contended that the district court should dismiss the information with prejudice. He maintained that the government had been investigating him since 2015 and could've indicted him "well before" the March 2020 grand jury suspension. He also argued that the government could've sought his indictment in another district that hadn't suspended the grand jury. And B.G.G. asserted that an information filed without the defendant's waiver of indictment was "meaningless" and couldn't "institute" the prosecution under section 3282(a).

The district court declined to adopt the government's proposed dismissal order. The district court wrote that, although it

intended to dismiss the information, the "fundamental issue" was whether the government's "tactical" use of rule 48(a) was appropriate. The district court explained that the point of rule 48(a)'s "leave of court" requirement was to protect a defendant against prosecutorial harassment and to bar dismissals "clearly contrary to the public interest." B.G.G.'s objection to a dismissal without prejudice went "to the heart" of rule 48(a)'s leave of court requirement, the district court wrote, "because court approval is necessary under [r]ule 48(a) for the protection of a defendant under circumstances where, as here, the [g]overnment is seeking to dismiss for the purpose of commencing another prosecution at a different time or place deemed more favorable to the prosecution."

The district court acknowledged that the government was entitled to "substantial deference" in seeking to dismiss the information. And the district court did not "question the subjective good faith of the prosecutor." But the district court wrote that it would reject a dismissal without prejudice if the government's use of rule 48(a) harassed B.G.G. or was contrary to the public interest. The district court ordered the parties to brief the question of whether, under rule 48(a), a dismissal without prejudice was appropriate under the circumstances.

The government argued in its supplemental brief that a dismissal without prejudice was appropriate. The government was entitled to a presumption of good faith when it sought to dismiss an information, it argued, and B.G.G. had to show bad faith to overcome that presumption. The government maintained that it

had not acted in bad faith, as reflected by the district court's finding that the government had not acted in bad faith. The government also had not harassed B.G.G., it said; rather, it had filed the information under seal to protect his reputation and had agreed that B.G.G. did not need to be formally arrested or even appear in court. The government argued that its intent to dismiss the information was not a "trick" or a "tactic," but a way to "institute" the charge under section 3282(a) and ensure that it could later pursue the case by indicting B.G.G., as provided by section 3288, once the grand jury reconvened.

B.G.G. responded that the government's motion to dismiss the information was harassment because it was an attempt to get around the statute of limitations. B.G.G. argued that the government's admission that it had filed the information and sought its dismissal "to guard against the running of the statute of limitations" was a concession that the dismissal was tactical. Thus, B.G.G. maintained, the government had the burden to explain why a dismissal without prejudice was appropriate. B.G.G. argued that the government couldn't meet its burden for three reasons: (1) the government could've indicted him sooner; (2) the government could've indicted him in another district; and (3) he had been prejudiced by the delay because key witnesses had died or couldn't be located. Because the government's motion to dismiss amounted to harassment and was contrary to the public interest, B.G.G. urged the district court to dismiss the information with prejudice.

*The district court's dismissal order*

The district court dismissed the information with prejudice. It acknowledged that the government was generally entitled to a presumption of good faith in seeking to dismiss an information. This presumption could be overcome if the defendant showed that the government sought dismissal in bad faith, or if he showed that the government's failure to articulate its reasons for the dismissal prejudiced his ability to attack the government's motives. But the district court determined that the presumption of good faith wasn't "relevant to the case at hand" because the government had identified its reasons for the dismissal. So the district court didn't apply the presumption of good faith to the government's rule 48(a) motion.

The government, the district court wrote, couldn't use rule 48(a) "to gain a position of advantage or to escape from a position of less advantage in which the [g]overnment found itself as the result of its own election." The government's motives in "strategically" filing the information against B.G.G. and then moving to dismiss it were "no mystery," the district court explained; the government "ha[d] been transparent" about its intent to protect against the statute of limitations and to indict B.G.G. when the grand jury reconvened. But the district court rejected the government's "implicit characterization" of its motives as a "non-issue[]" because its desired result—to institute the information under section 3282(a) by filing it and to later use section 3288's tolling provision to indict

B.G.G.—"at least arguably" amounted to prosecutorial harassment.

The district court explained that a dismissal without prejudice would be an end-run around the statute of limitations, would violate B.G.G.'s Fifth Amendment right to prosecution by indictment, and would be against the public interest. Although the district court didn't find that the government had sought the dismissal in bad faith, it found that the government was acting in a manner contrary to B.G.G.'s rights to achieve a "tactical advantage." This finding rested on the district court's conclusion that the five-year limitations period had expired because the sealed information was a "nullity."[2]

The district court concluded that the five-year statute of limitations had expired because the information hadn't "instituted" the prosecution within the meaning of section 3282(a). The district court explained that the information wasn't instituted for purposes of section 3282(a) where it was unaccompanied by a waiver of indictment under rule 7(b). The district court gave two reasons for its conclusion.

---

[2] The district court acknowledged that examining the statute of limitations in the context of rule 48(a) was "unusual," because "[n]ormally" a "statute of limitations defense would be raised by a defendant after indictment." But, the district court reasoned, examining sections 3282(a) and 3288 was necessary because a dismissal without prejudice "would enable and invite" an "unlawful" action—the circumvention of the statute of limitations.

First, the district court reasoned that it would be inconsistent with the Fifth Amendment and rule 7(b) to "recognize an invalid charging document as a mere mechanism for extending a statute of limitations period, though the same legal instrument could not serve to initiate criminal proceedings on the charges contained therein or confer subject matter jurisdiction on the court in which those proceedings are to take place." Second, the district court analyzed the legislative history and "historical context" of sections 3282(a) and 3288 and concluded that an information that couldn't be used to prosecute the defendant also couldn't be used to toll the limitations period.

The government appeals the dismissal with prejudice.

## STANDARD OF REVIEW

We review an order dismissing an information under rule 48(a) for an abuse of discretion. *United States v. Dyal*, 868 F.2d 424, 426 (11th Cir. 1989). And we review the district court's factual findings underlying its rule 48(a) decision for clear error. *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991).

The abuse of discretion standard is "extremely limited and highly deferential." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001). The standard gives the district court a "range of choice," provided that the choice does not constitute a "clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted). Where the district court has properly exercised its discretion, we cannot "substitute

[our] discretion for that of the district court." *United States v. Diaz*, 811 F.2d 1412, 1415 (11th Cir. 1987) (quotation omitted). But the abuse of discretion standard is not toothless. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). In other words, a district court cannot properly exercise its discretion where it is "guided by erroneous legal conclusions." *Id.*

## DISCUSSION

The government argues that the district court abused its discretion in dismissing the information with prejudice under rule 48(a) without finding that the government's motion to dismiss was filed in bad faith. We agree.[3]

We begin by explaining the district court's limited role when the government moves to dismiss an information before trial under rule 48(a), and the requirements for exercising the court's limited discretion. We then apply the "leave of court" requirements to B.G.G.'s case and conclude that the district court erred as a matter of law, and therefore abused its discretion, in dismissing the information with prejudice.

---

[3] Because we conclude that the district court abused its discretion in dismissing the information with prejudice, we do not reach the issue of whether filing an information without a waiver of indictment institutes the prosecution, and tolls the statute of limitations, under sections 3282(a) and 3288.

*Rule 48(a)'s "leave of court" requirements*

"The Supreme Court has repeatedly reaffirmed the principle—which dates back centuries—that 'the [e]xecutive [b]ranch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) (en banc) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). The "core" or "essence" of prosecutorial discretion is "the decision whether or not to charge an individual with a criminal offense in the first place." *Id.*

This core discretion also includes the decision whether to dismiss a prosecution. As the former Fifth Circuit explained, the executive branch "remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975).

The judiciary has a role to play when the government seeks to dismiss a prosecution—but it's a limited one. *See United States v. Bernard*, 42 F.4th 905, 908 (8th Cir. 2022) ("[A]lthough the district court has some discretion in this area, it 'is sharply limited by the separation of powers balance inherent in [r]ule 48(a).'" (quotation omitted)). The "Supreme Court has declined to construe [r]ule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016). The "principal object of the 'leave of court' requirement," the Supreme Court has said, is to "protect a defendant against

prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the [g]overnment moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("The purpose of [rule 48(a)] is to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy.").

Over the years, we have set out the requirements under rule 48(a) to guide the district courts in exercising their limited discretion to grant or deny "leave" to dismiss an information. *First*, "the government is entitled to a presumption of good-faith." *Dyal*, 868 F.2d at 428; *see also Matta*, 937 F.2d at 568 ("In rule 48(a) dismissals and subsequent indictments, the government is entitled to a presumption of good faith."); *Cowan*, 524 F.2d at 514 (concluding that the district court abused its discretion in denying the government's rule 48(a) motion to dismiss where "[n]othing in this record overc[a]me[] the presumption that" the government had sought the dismissal "in good faith"). The good-faith presumption recognizes that, although rule 48(a) is meant to be "a check on the abuse of [e]xecutive prerogatives," it is not "intended to confer on the [j]udiciary the power and authority to usurp or interfere with the good faith exercise of the [e]xecutive power to take care that the laws are faithfully executed." *Cowan*, 524 F.2d at 513. It also recognizes that the government is "the first and presumptively the best judge of whether a pending prosecution should be terminated." *Id.*

*Second*, "leave" may be denied where the good-faith presumption has been overcome by a finding that the government sought the dismissal in bad faith.[4] *Dyal*, 868 F.2d at 429. A defendant can rebut the presumption of good faith "in response to the government's motion to dismiss the original prosecution or via his own motion to dismiss a subsequent indictment" by demonstrating that the government sought dismissal under rule 48(a) "in bad faith."[5] *Id.* at 428. A defendant can establish bad faith if "the record affirmatively suggests" that the government sought the dismissal "in order to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment." *Id.* at 429.

*Third*, the focus of the bad faith analysis must be on the government's reasons for dismissing the information. *See id.* at 426–28 (discussing the government's "presumption of good faith in seeking dismissal"); *Matta*, 937 F.2d at 568 (explaining that bad faith

---

[4] If the presumption of good faith has not been overcome, the district court must grant "leave" to dismiss the information.

[5] Where the government fails to provide its reasons for the initial dismissal and the defendant moves to dismiss a "subsequent indictment," the defendant can also rebut the presumption of good faith by demonstrating that he "'has been prejudiced in his ability to attack the prosecutor's motives due to the trial court's failure to require submission of adequate reasons' as a condition of dismissal of the prior prosecution." *Dyal*, 868 F.2d at 428 (quoting *United States v. Welborn*, 849 F.2d 980, 984 (5th Cir. 1988)). Here, because, as the district court found, the government has been upfront about its reasons for seeking dismissal, this alternative way of overcoming the presumption of good faith is not implicated by this appeal.

turns on the "government's reason for seeking dismissal of the . . . indictment"). The Supreme Court's decision in *Rinaldi* shows this requirement in action.

The defendant in *Rinaldi* robbed a hotel and was charged with robbery both in federal and state court. 434 U.S. at 23. The defendant was convicted of the state charges and sentenced to six years in prison. *Id.* His "subsequent federal trial ended in a mistrial." *Id.* at 23–24. After the mistrial, the district court questioned why a retrial was necessary given the state conviction and sentence. *Id.* at 24. Counsel for the government responded that "he had been instructed by his superiors at the Department of Justice to pursue the federal prosecution vigorously because of their concern that the state convictions might be reversed on appeal." *Id.* The defendant was convicted in the federal case after a second trial. *Id.*

On appeal, the defendant argued that his conviction violated the Department of Justice's *Petite* policy,[6] "a longstanding federal policy against multiple prosecutions for the same act." *Id.* The government conceded that the *Petite* policy had been violated and, following a remand, moved to dismiss the indictment under rule

---

[6] *See Petite v. United States*, 361 U.S. 529, 530 (1960). Under the Department of Justice's *Petite* policy, a "United States Attorney contemplating a federal prosecution in these circumstances"—a federal prosecution following a state conviction for the same acts—"is required to obtain authorization from an appropriate Assistant Attorney General." *Rinaldi*, 434 U.S. at 24 n.5.

48(a). *Id.* at 24–25. The district court denied the motion, finding that the government had acted in bad faith in representing, after the federal mistrial, that the Department of Justice had authorized the federal prosecution. *Id.* at 25. Both the government and the defendant appealed, and the former Fifth Circuit, sitting en banc, held that the government's "unclean hands"—its representations after the mistrial—justified the district court's denial of the rule 48(a) motion to dismiss. *Id.* at 26.

But the Supreme Court explained that "[t]he salient issue" was "not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the [g]overnment's later efforts to terminate the prosecution were similarly tainted with impropriety." *Id.* at 30. The Supreme Court held that the district court erred in denying the government's rule 48(a) motion to dismiss because there was no evidence establishing "bad faith on the part of the [g]overnment at the time it sought leave to dismiss the indictment." *Id.* That must be the focus of the district court's bad-faith finding—and not on whether the government's decision to initiate or maintain the prosecution was made in bad faith.

*Fourth*, if the defendant has overcome the presumption of good faith, the district court must still dismiss the information "if the reason for dismissal does not go to the merits or demonstrate a purpose to harass." *Matta*, 937 F.2d at 568. That is the ultimate test the district court must apply in exercising its limited discretion to grant or deny "leave" to dismiss an information under rule 48(a).

*Fifth and finally*, if the district court grants "leave" to dismiss the information, the "rule 48(a) dismissal[] [is] without prejudice" because it does not bar a future prosecution on the same charges. *Id.* at 568–69. As the former Fifth Circuit explained in *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), "[i]t is true that [r]ule 48(a) states that a United States Attorney may, by leave of court, file a dismissal of an indictment 'and the prosecution shall thereupon terminate.'" *Id.* at 118 (quoting *United States v. Chase*, 372 F.2d 453, 463–64 (4th Cir. 1967)). "[B]ut," the *Davis* court explained, "the authorities are replete that such a dismissal is without prejudice." *Id.* (quoting *Chase*, 372 F.2d at 463). "It is precisely because a dismissal under [r]ule 48(a) *does not bar* a subsequent prosecution that the rule requires the consent of the court." *Id.* (emphasis added).

The former Fifth Circuit reached the same conclusion in *United States v. Pitts*, 569 F.2d 343 (5th Cir. 1978). There, the defendant was charged with interstate transportation of a stolen vehicle but, with the district court's leave, the government dismissed the original indictment under rule 48(a) right before the trial started because its key witness "was not present." *Id.* at 346. Later, the government indicted the defendant again for the same charge, and he was convicted at trial. *Id.* On appeal, the defendant argued that indicting him after the government's rule 48(a) dismissal violated his Fifth Amendment double jeopardy rights. *Id.* The former Fifth Circuit concluded that double jeopardy didn't bar the defendant's reprosecution after the rule 48(a) dismissal. *Id.* at 347.

*The district court's dismissal of the information with prejudice was an abuse of discretion*

For five reasons, the district court did not follow the "leave of court" requirements for exercising its limited discretion under rule 48(a). Because the district court was "guided by erroneous legal conclusions," we must reverse. *See Koon*, 518 U.S. at 100.

1.

*First*, the district court erred in refusing to apply the presumption of good faith to the government's rule 48(a) motion to dismiss. The district court acknowledged that the government ordinarily was entitled to the presumption of good faith in seeking to dismiss under rule 48(a). But the district court didn't apply the good-faith presumption because, it explained, the presumption applies "in cases where the government has failed to articulate any reason or factual basis for dismissal in the [r]ule 48(a) motion." The district court concluded that the good-faith presumption wasn't relevant in B.G.G.'s case because the government had "identified the reason it [sought] a [r]ule 48(a) dismissal."

But the presumption of good faith applies when the government seeks dismissal under rule 48(a)—regardless of whether it has explained the dismissal. *See Dyal*, 868 F.2d at 428 ("We conclude that, in the dismissal of an indictment, information or complaint under [r]ule 48(a), the government is entitled to a presumption of good-faith."); *Matta*, 937 F.2d at 568 ("In rule 48(a) dismissals . . . , the government is entitled to a presumption of good faith."). Take

*Cowan* as an example. There, the former Fifth Circuit applied the presumption of good faith even where, as here, the government gave its reasons for seeking dismissal. *See Cowan*, 524 F.2d at 514.

In *Cowan*, the defendant was indicted in Texas for fraud and for making a false statement to the grand jury. *Id.* at 506. Then, the defendant and the "Watergate Special Prosecution Force" negotiated an agreement where the defendant agreed to plead guilty in the District of Columbia to bribery in a separate case. *Id.* The plea agreement required the defendant to disclose "all relevant information and documents within [his] knowledge and possession concerning matters then under investigation by the Watergate Special Prosecution Force," and, if necessary, to testify in any cases arising out of the Watergate investigation. *Id.* In exchange, the government agreed to dismiss the Texas indictment. *Id.* The government's rule 48(a) motion to dismiss the Texas indictment explained that the defendant's "testimony was necessary to the investigation and prosecution of the indictment in the District of Columbia" and, without the plea agreement, the defendant's testimony "would be lost." *Id.*

The former Fifth Circuit concluded that the district court abused its discretion in denying the government's rule 48(a) motion to dismiss the Texas indictment. *Id.* at 514–15. The *Cowan* court said that the record did not "overcome[] the presumption that" the government sought the dismissal "in good faith for substantial reasons sufficiently articulated in the motion to dismiss." *Id.* at 514.

*Cowan*, in other words, applied the presumption of good faith even though the government had given "substantial reasons" for the dismissal. *See id.* That is what the district court had to do here: apply the presumption of good faith to the government's rule 48(a) motion to dismiss the information, as required by *Cowan*, *Dyal*, and *Matta*.

The dissenting opinion says that our reading of the district court's order—that it didn't apply the good-faith presumption—isn't a "fair" one. Dissenting Op. at 5. But we think it's fair given that the district court didn't mention the good-faith presumption after it concluded the presumption wasn't relevant to this case. Not once. Surely the district court would have referenced the good-faith presumption again after saying it wasn't relevant to the case if it thought the presumption was relevant. But it didn't.

And we think our reading is fair given that the district court never found that the presumption had been overcome. Surely the district court would have found the presumption had been overcome, as it was required to do under rule 48(a), if it thought the presumption was relevant. But it didn't.

2.

*Second*, the district court didn't require B.G.G. to overcome the presumption of good faith by showing that the government sought the dismissal in bad faith. Requiring the defendant to overcome the presumption of good faith, the district court concluded, was not "relevant to the case at hand." But a finding of bad faith

was required to overcome the presumption of good faith.  *See Matta*, 937 F.2d at 568 ("To overcome the presumption of good faith, the defendant must show that the initial dismissal was in bad faith . . . ."); *Dyal*, 868 F.2d at 428–30 (reversing dismissal of indictment because the defendant "failed to rebut th[e] presumption of good faith" and he failed to "adequately demonstrate[]" bad faith). Here, the district court never made the critical bad-faith finding because it believed that overcoming the good-faith presumption was irrelevant.

The dissenting opinion concedes that the district court "did not explicitly find that the good-faith presumption was rebutted." Dissenting Op. at 6.  That should be the end of it, but no matter, the dissenting opinion says, because the district court "made" the bad-faith finding "implicitly." *Id.*  Sometimes a finding can be implied from a district court's order.  But a finding cannot be implied when it is contrary to the district court's explicit findings, as it is here.  The district court explicitly found that it "d[id] not question the subjective good faith of the prosecutor."  How can an implicit finding of bad faith be consistent with an explicit finding that there were no questions about the government's good faith, as the dissenting opinion asserts?  It isn't.  They aren't consistent.  They are inconsistent.  Which is why we can't imply bad faith here.

The dissenting opinion offers three reasons for why it ignores the district court's explicit good-faith finding.  First, it says, the good-faith finding is in a non-final and non-appealable order. *Id.* at 7.  But we know of no rule or case that would allow us to

ignore a district court finding because it's in a non-final, interlocutory order. And, even if there was such a rule or case, the explicit good-faith finding was not non-final and non-appealable. "When a district court enters a final judgment *all* prior non-final orders and rulings which produced the judgment are merged into the judgment and subject to review on appeal." *Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1563 (11th Cir. 1993) (quotation omitted; emphasis added). That's what happened here. The good-faith finding was final and appealable because it merged—like *all* of the district court's prior orders—into the final dismissal order.

Second, the dissenting opinion says that the explicit good-faith finding was in a "case management order." Dissenting Op. at 7. Again, we know of no rule or case that would allow us to ignore a district court finding because it's in a case management order. But, even if there was such a rule or case, the explicit good-faith finding was not in a case management order. The district court's order went on for six pages. It rehashed the case's procedural history, made fact findings, and discussed the statute of limitations issue and the court's authority under rule 48(a) to grant leave to dismiss the information. The order ended by denying B.G.G.'s motion for relief, reserving ruling on the government's order of dismissal, and asking for supplemental briefing from the parties.

Third, the dissenting opinion says that the district court limited its explicit good-faith finding to "at [the] time" of the district court's order. *Id.* at 7. But that's not what the district court found. The district court found that it "d[id] not question the subjective

good faith of the prosecutor." The district court did not add, as the dissenting opinion does, "for right now" or "until we get more information." The district court didn't question the government's good faith—period. And the final order of dismissal never retracted, revised, or receded from this explicit good-faith finding. We cannot ignore the explicit good-faith finding that the district court actually made for an inconsistent implicit finding that the district court never made.

The dissenting opinion then shifts gears and finds on its own "that the government's conduct amounted to harassment," *id.* at 7, even though the district court found no more than that the government's motivation for filing the information "arguably" fell within the definition of harassment. While we can affirm for any reason supported by the record, as the dissenting opinion says we should, "[i]t is not an appellate court's role to find facts." *United States v. Barnette*, 10 F.3d 1553, 1558 (11th Cir. 1994). "That is a function of the district courts." *Id.* "If [the dissenting opinion] believe[s] that the [d]istrict [c]ourt . . . failed to make findings of fact essential to a proper resolution of the legal question," the remedy is to "remand[] to the [d]istrict [c]ourt to make those findings." *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). "[I]t should not," as the dissenting opinion does, "simply have made factual findings on its own." *See id.*

3.

*Third*, the district court erred in focusing its rule 48(a) analysis on the government's reasons for filing the information and not

on its reasons for seeking the dismissal. The district court, for example, emphasized that "the [g]overnment strategically timed its filing of the [i]nformation" to protect against the running of the statute of limitations. The "[g]overnment's sole motivation behind filing the [i]nformation," the district court stressed, "was to 'preserve the ability to proceed with criminal charges against the [d]efendant' in the future." And the district court, by its own admission, "devote[d] considerable attention . . . to the substantive legal question of whether the [g]overnment 'instituted' the unconsented [i]nformation by filing it."

But devoting considerable attention to the reason why the government filed the information missed the mark. The rule 48(a) "leave" analysis turns on the "government's reason for seeking dismissal of the" information. *Matta*, 937 F.2d at 568; *see also Rinaldi*, 434 U.S. at 30 (explaining that "[t]he salient issue" was "not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the [g]overnment's later efforts to terminate the prosecution were similarly tainted with impropriety"). It does not turn on the government's reasons for initiating the prosecution. By focusing on the government's reason for filing the information—to institute the prosecution under section 3282(a)—and not on the government's reason for dismissing the information—B.G.G.'s refusal to waive his right to indictment and consent to the information—the district court made an error of law.

The dissenting opinion says that this case is different from *Rinaldi* because, unlike that case, "the government's reason for filing and dismissing the information was one and the same." Dissenting Op. at 8–9. But that's not what the district court found. As to filing the information, the district court found that the government's "sole motivation" "was to preserve the availability to proceed with criminal charges against the [d]efendant in the future." As to dismissing the information, the district court found that the government moved to dismiss it "[b]ecause" B.G.G. "declined to waive his right to indictment by a grand jury and consent to proceed by way of [i]nformation." And the district court found, again, that "[b]ecause [B.G.G.] w[ould] not consent to proceed by way of [i]nformation, the [g]overnment request[ed] dismissal without prejudice." The dissenting opinion believes that the "filing and the dismissal [were] inextricable," *id.* at 9, but that's not what the district court found. The government's reasons for filing and dismissing the information, the district court found, were not the same.

The dissenting opinion concedes that "the district court needn't have . . . discussed the government's reasons for filing the information" and, instead, points to a few stray references in the district court's order to the government's reasons for dismissal and says that's enough. *Id.* at 10. But it's not. If we ignored the parts of the district court's order discussing the government's reasons for filing the information, there wouldn't be much of an order left. That's because, as the district court explained, it "devote[d] considerable attention" to "whether the [g]overnment 'instituted' the

unconsented [i]nformation by filing it with the [c]ourt." And the district court was true to its word. Its considerable attention went on for thirteen pages (out of less than twenty) explaining why, under section 3282 and rule 7(b), the information was not instituted for statute-of-limitation purposes. Even the district court acknowledged that what it was doing was "unusual." It was unusual because devoting considerable attention to the government's reasons for initiating the prosecution was exactly the error the district court made—and what led to a reversal—in *Rinaldi*.

4.

*Fourth*, the district court erred in failing to apply the ultimate test in deciding whether to grant "leave" to dismiss the information: where the defendant has overcome the presumption of good faith, an information "will be dismissed" "if the reason for dismissal does not go to the merits or demonstrate a purpose to harass." *Matta*, 937 F.2d at 568. Here, the district court didn't find that B.G.G. had overcome the presumption of good faith. It didn't find that the government's reason for the dismissal went to "the merits" of the information. *See id.* And it didn't find that the reason for the dismissal demonstrated a purpose to harass B.G.G. At best, the district court found that the government's purpose in filing the information—not in moving to dismiss it—"arguably" was harassment. But that's not the ultimate test for granting "leave" under rule 48(a).

5.

*Fifth and finally*, the district court erred in dismissing the information with prejudice. The government sought "leave to dismiss the information without prejudice" and argued that the district court had "no legal basis to dismiss the information with prejudice." Once the district court decided to grant "leave" to dismiss the information before trial, the dismissal under rule 48(a) had to be without prejudice and could not bar a future prosecution. *See Davis*, 487 F.2d at 118 (explaining that "the authorities are replete" that rule 48(a) dismissals are "without prejudice" and "do[] not bar a subsequent prosecution" (quotation omitted)); *accord Pitts*, 569 F.2d at 346–47 (jeopardy did not attach to second indictment for the same charges where the first indictment was dismissed under rule 48(a) with leave of court before trial).

The district court, in exercising its limited discretion, must decide whether to grant "leave" or deny it after following the rule 48(a) requirements. If the district court grants "leave" before trial, the dismissal must be without prejudice and the dismissal will not bar to a second prosecution.

The dissenting opinion quotes the dicta in *Matta*—that "[g]enerally, unless a contrary intent is clearly expressed, rule 48(a) dismissals are without prejudice," 937 F.2d at 568—and says that, despite what "the old Fifth Circuit" held in *Davis* and *Pitts*, the district court had the discretion to ignore the government's dismissal without prejudice, and, instead, dismiss the information with

prejudice and bar a second prosecution.[7]  Dissenting Op. at 11–13. But it did not.

When *Matta* said "unless a contrary intent is clearly expressed," it was referring to the government's clearly expressed contrary intent.  Recognizing that the government is the "first" and "the best judge of whether a pending prosecution should be terminated," *Cowen*, 524 F.2d at 513, the text of rule 48(a) gives the

---

[7] The "unless-a-contrary-intent-is-clearly-expressed" language in *Matta* is dicta because no contrary intent was clearly expressed in that case and "[a] decision can hold nothing beyond the facts of that case."  *See United States v. Birge*, 830 F.3d 1229, 1233 (cleaned up).  Because there was no clearly expressed contrary intent in *Matta*, the case could not have held that there's an exception to the general rule that rule 48(a) dismissals are without prejudice.  The dissenting opinion doesn't dispute that the *Matta* dicta is anything but dicta.

Instead, the dissenting opinion responds that the rule of *Davis*—that pretrial rule 48(a) dismissals are without prejudice and do not bar a second prosecution—is dicta.  But it is not.  In *Davis*, the defendants argued that the dismissal of their first indictment under rule 48(a) barred a second indictment and prosecution.  487 F.2d at 118.  The former Fifth Circuit rejected the defendants' argument because:  (1) "the authorities [were] replete that" a rule 48(a) "dismissal [was] without prejudice"; (2) under rule 48(a), jeopardy attached to dismissals "only when a trial ha[d] begun" and not before; and (3) rule 48(a) required the court's consent only "because a dismissal under [r]ule 48(a) d[id] not bar a subsequent prosecution."  *Id.*  That rule 48(a) dismissals were without prejudice and did not bar a second prosecution was necessary to the result in *Davis* that the defendants' second prosecution was not barred by the earlier rule 48(a) dismissal.  *See United States v. Matchett*, 802 F.3d 1185, 1195 (11th Cir. 2015) ("A holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound." (quotations omitted)).

government—and not the court—the discretion to seek dismissal of an information (or indictment). The rule couldn't be clearer: "*[t]he government* may . . . dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a) (emphasis added).

Because the government is the only party allowed under rule 48(a) to seek the dismissal, the government gets to decide the nature of the dismissal it seeks. Generally, the government's dismissal is without prejudice so as not to preclude it from refiling the information. But if, in its dismissal, the government clearly expresses a contrary intent to dismiss the information with prejudice, then any leave to dismiss the information will be with prejudice. That is what *Matta* referred to when it said that, generally, a rule 48(a) dismissal is without prejudice and does not bar a later prosecution unless a contrary intent is clearly expressed.

The district court's role is a limited one. After complying with the rule 48(a) requirements, the district court has two options under the rule's text—it may grant "leave" (that is, "permission") or deny it. *See Leave*, Black's Law Dictionary 1069 (11th ed. 2019). The district court may give the government permission to dismiss the information on the terms it sought, or the court can withhold permission after complying with the rule 48(a) requirements. But rule 48(a) does not give the district court the discretion to rewrite the government's dismissal motion from one without prejudice to one with prejudice. It is the government's dismissal—not the court's. And not the defendant's. Because the district court here did more than grant the government "leave" to dismiss the

information without prejudice—by dismissing the information with prejudice and barring a further prosecution—it abused the limited discretion given to it under rule 48(a).

The dissenting opinion never really grapples with the text of rule 48(a), and the limited role courts play in granting leave to dismiss a pending prosecution, because it thinks the result is "repugnant to the constitutional protections afforded criminal defendants." Dissenting Op. at 13. It cannot be, the dissenting opinion explains, that if the district court properly finds bad faith its *only* options are to grant or deny the government leave to dismiss the information.

Of course these aren't the district court's *only* options under the Constitution, the U.S. Code, the Federal Rules of Criminal Procedure, and the court's inherent powers. But this case is not about the broad menu available to the district court to address bad faith. It is about the sharply limited role the courts play in the separation of powers balance inherent in rule 48(a). *See Bernard*, 42 F.4th at 908. Under that balance, rule 48(a) limits the district court to granting or denying the government permission to dismiss the information without prejudice (unless the government expresses a contrary intent).

The dissenting opinion clearly believes that what the government did in this case was unfair. *See, e.g.*, Dissenting Op. at 1, 2 n.1, 7, 11 (describing what the government did as "concocted," "unheard of," "harassment," and a "singular bad-faith gambit"). But "[e]ven if we agree that [a rule] allows for harsh or unfair

consequences, that does not give us license to ignore the plain meaning of the text." *Highpoint Tower Tech. Inc. v. Comm'r of Internal Revenue*, 931 F.3d 1050, 1060 n.8 (11th Cir. 2019) (first alteration in original; quotation omitted). Rule 48(a)'s plain text does not allow the district court to grant *a defendant's* request to dismiss the information with prejudice. *See* Fed. R. Crim. P. 48(a) ("*The government* may, with leave of court, dismiss an indictment, information, or complaint." (emphasis added)). Yet, as the dissenting opinion acknowledges, that's exactly what the district court did here—it granted B.G.G's request for a dismissal with prejudice. *See* Dissenting Op. at 2 (The district court "granted the government's motion in part, but only with prejudice—as B.G.G. requested.").

★    ★    ★    ★

The "district court abuses its discretion" where it "applies the law in an . . . incorrect manner" and "follows improper procedures in making a determination." *United States v. Green*, 873 F.3d 846, 854 (11th Cir. 2017) (quotation omitted). That is what happened here. The district court did not follow the rule 48(a) "leave of court" requirements. It did not presume that the government's dismissal was in good faith. It did not find bad faith to overcome the good-faith presumption. It did not focus on the government's reasons for moving to dismiss the information. It did not apply the ultimate test for granting "leave of court." And it did not dismiss the information without prejudice. Because of these errors of law,

the district court's order dismissing the information was an abuse of discretion.

## CONCLUSION

Although "a dismissal under [r]ule 48(a) does not bar a subsequent prosecution," it also "does not impair the protection afforded by the statute of limitations." *Davis*, 487 F.2d at 118. If the grand jury later indicts B.G.G., he can still raise a statute of limitations defense. We do not pass on the statute of limitations issue today and do not determine whether the sealed information was instituted within the meaning of section 3282(a). We simply conclude that the district court erred in not applying the "leave" requirements for dismissing an information under rule 48(a). We therefore vacate the dismissal order and remand to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

21-10165                  WILSON, J., Dissenting                  1

WILSON, Circuit Judge, Dissenting:

Amidst the COVID-19 pandemic, some districts, including the Southern District of Florida, imposed a temporary grand jury moratorium.  With the moratorium in place, prosecutors in the Southern District of Florida worried that they would be unable to charge Defendant B.G.G. with two alleged felony offenses within the five-year statute of limitations.  The statute of limitations was set to expire on August 31, 2020, and the grand jury moratorium was to extend at least through November of that year.  Because the charged offenses were felonies, B.G.G. had a constitutional right to a grand jury indictment.  *See Stirone v. United States*, 361 U.S. 212, 215 (1960).  Only if he waived that right could the government proceed without convening a grand jury and charge him by information.  Fed. R. Crim. P. 7(b).  And the government knew that B.G.G. had not consented to being charged by information.  That is, he had not waived his right to indictment by grand jury.

But prosecutors concocted what they hoped was a workaround.  Just before the statute of limitations would expire, the government would file an information that it never expected to be viable for prosecution.  After the statute of limitations expired, the government would move for dismissal of the information without prejudice.  By doing so, the government thought, it could take advantage of a seldom-used statute, 18 U.S.C. § 3288, which allows the government a six-month grace period "[w]henever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations

2                     WILSON, J., Dissenting                    21-10165

has expired."[1]  Using that grace period, the government theorized, it could bring an indictment once grand juries resumed.

The government put that theory to the test here.  On August 28, 2020, it filed an information charging B.G.G. with two felony counts.  Three days later, on the very date the five-year statute of limitations was set to expire, the government served the information on B.G.G. at 6:33 p.m.  The next day, the government moved to dismiss the information without prejudice, seeking to trigger the sixth-month extension provided by § 3288.

The district court, however, saw through the government's ploy.  It granted the government's motion in part, but only with prejudice—as B.G.G. requested.  In its order, the court took the government to task for attempting "an end-run around the statute of limitations" in contravention of the defendant's rights.  In my view, the district court reached the right result.

The parties mostly agree as to the controlling law in our circuit.  Under rule 48(a), "[t]he government may, with leave of court, dismiss an indictment, information, or complaint."  Fed. R. Crim. P. 48(a).  Where the government acted in good faith, rule 48(a) dismissals are without prejudice.  *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991).  And "the government is entitled to a

---

[1] An amicus brief filed by former federal prosecutors in support of B.G.G. explains that § 3288, and its sister provision, § 3289, "were rarely used and were unheard of by most prosecutors" before the pandemic.

presumption of good faith," but the defendant can overcome that presumption by showing that the dismissal was in bad faith. *Id.*

We have explained that the government acts in bad faith by seeking dismissal "to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment." *United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989). And one form of prosecutorial harassment is "charging, dismissing, and recharging . . . over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam); *see also United States v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982) (explaining that "prosecutorial harassment involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution"). When the defendant demonstrates that the initial dismissal was in bad faith and for the purpose of harassment, the government is not entitled to dismissal without prejudice. *See Matta*, 937 F.2d at 568.

That is what happened here. The government's purpose, plain and simple, was "to achieve a tactical advantage in derogation of [B.G.G.'s] rights." *Dyal*, 868 F.2d at 429. So, by definition, the government acted in bad faith. Moreover, the government's plan to "charg[e], dismiss[ ], and recharg[e] [B.G.G.] . . . over [his] objection" is exactly what the Supreme Court has labeled harassing conduct. *Rinaldi*, 434 U.S. at 29 n.15. The district court thus correctly dismissed the information with prejudice.

Yet the majority reverses the district court, offering five reasons to support its decision: (1) the district court failed to apply the

good-faith presumption; (2) the district court made no finding of bad faith to rebut the good-faith presumption; (3) the district court improperly focused on the government's reasons for filing the information rather than its reasons for seeking dismissal; (4) the district court never made a finding that the government's reason for seeking dismissal went to the merits of the information or that its purpose was to harass the defendant; and (5) under binding precedent, rule 48(a) dismissals are without prejudice. Maj. Op. at 32. As I'll explain, I see things differently.

First off, I disagree that the district court failed to apply the presumption of good faith. As the majority acknowledges, the district court stated plainly that "the government is entitled to a presumption of good-faith." Then, in a footnote, the court described how that rule works in a case where the government failed to state its reasons for dismissal. In such a case, a defendant can rebut the good-faith presumption by showing: (1) bad faith *or* (2) that he was prejudiced in his ability to attack the prosecution's motives. *See Dyal*, 868 F.2d at 428. In other words, while defendants normally have to show bad faith to rebut the good-faith presumption, a second avenue becomes available to them when the government has been silent as to its motivations.

In this case, however, the government *had* given its reasons for dismissal. So, the district court concluded that this rule was irrelevant. Here's what the district court said in the footnote:

> To overcome the presumption of good faith in cases where the government has failed to articulate

21-10165                    WILSON, J., Dissenting                    5

any reason or factual basis for dismissal in the [r]ule 48(a) motion or proposed order, the defendant must show that "(1) the [] dismissal was in bad faith, or (2) that the defendant has been prejudiced in his ability to attack the prosecutor's motives due to the trial court's failure to require submission of adequate reasons . . . ." [*Dyal*, 868 F.2d at 428] (internal quotation marks omitted); *see also Matta*, 937 F.2d at 568. In the instant case, the Government has identified the reason it seeks a [r]ule 48(a) dismissal in its proposed Order of Dismissal; therefore, I do not find this rule relevant to the case at hand.

The majority reads this footnote differently. It casts the district court as having "determined that the *presumption of good faith* wasn't 'relevant to the case at hand.'" Maj. Op. at 9 (emphasis added). I don't think that's a fair reading of the footnote. All the district court said was that a rule telling us what happens when the government does *not* give its reasons for dismissal is irrelevant where the government *does* give its reasons for dismissal. The final sentence of the footnote limits the district court's remark about relevancy to "this rule," which in context naturally refers to the rule described in the sentence immediately prior. It would have been curious indeed for the district court to state the good-faith presumption above the line, only to find it irrelevant below the line. In context, that's not what the district court did.

6                    WILSON, J., Dissenting                    21-10165

Of course, the majority also disputes that the district court ever found the government to be seeking dismissal in bad faith. But I read the district court's order differently. Although the order did not explicitly find that the good-faith presumption was rebutted, it made that finding implicitly. Time and again, we have held that we can "infer[ ] from a district court's explicit factual findings and conclusion implied factual findings that are consistent with its judgment although unstated." *United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004) (en banc); *see also United States v. Watkins*, 13 F.4th 1202, 1213–14 (11th Cir. 2021) (collecting cases).

Here, when the district court found that the government's use of rule 48(a) to achieve "a tactical advantage" was "inconsistent with honoring [B.G.G.'s] rights," it was quoting the definition of bad faith in this context. *See Dyal*, 868 F.2d at 429 (defining bad faith as seeking dismissal "to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment"). While acknowledging the government's contention that it "acted in good faith in seeking to charge [B.G.G.] and subsequently dismiss such charges," the district court stated that it "disagree[d] with the Government's implicit characterization of its motivations." So, the district court's order, fairly read, implicitly found bad faith, and that implied finding was consistent with the court's judgment. *See $242,484.00*, 389 F.3d at 1154.

The district court's finding about the government's tactical motives and its finding disagreeing with the government's characterization of its own motives are entitled to deference from this

21-10165              WILSON, J., Dissenting                    7

court under a clearly erroneous standard. *Matta*, 937 F.2d at 568. They are not clearly erroneous as the record supports the conclusion that the government's purpose was to harass B.G.G., thus overcoming the presumption of bad faith and justifying dismissal with prejudice. The majority emphasizes that the district court stopped short of finding harassment because it stated only that there was "arguably" harassment. Maj. Op. at 27. Even so, we may affirm for any reason supported by the record, *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012), and this record establishes that the government's conduct amounted to harassment as the Supreme Court has defined it in this context.

The majority opinion claims that the district court "explicitly found" the government acted in good faith. Maj. Op. at 22. Not so. The only citation for this "finding" is to the district court's order requesting supplemental briefing from the parties. To the extent that the district court's statement in a non-appealable, non-final case management order shows anything, it shows only that the district court did not "question[]" the government's good faith at that time. Following that order, the district court received two supplemental briefs as well as an hour of oral argument. With the benefit of that information, the district court's final order dismissing the case with prejudice reflected the implicit finding of bad faith I described above.

As explained above, the purpose of the "leave of court" requirement is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the

Government moves to dismiss . . . over the defendant's objection." *Rinaldi*, 434 U.S. at 29 n.15. Is there any set of facts that better fits this definition? The district court found—and the record supports—that the government sought "to charge, dismiss, and recharge at a different time or place deemed more favorable to the prosecution." As the district court observed, the government has been transparent about its aim: to charge B.G.G., dismiss the charges, and then to recharge, to avoid the running of the statute of limitations. I recognize that the district court hedged its finding by calling the government's conduct "arguably" harassment. But because the record emphatically supports the district court's implicit finding that the government's conduct amounted to harassment, as the Supreme Court has defined that term, the district court's order should be affirmed. *Chitwood*, 676 F.3d at 975.

I am equally unpersuaded by the majority's contention that we should reverse because the district court improperly focused on whether *filing* the information, rather than *dismissing* it, was a tactical move. The majority is correct that in *Rinaldi* the Supreme Court held that what mattered was "not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety." 434 U.S. at 30. And in that case, the government's reasons for terminating the prosecution were not "clearly contrary to manifest public interest." *Id.*

There are two critical differences here. First, unlike in *Rinaldi*, the government's reason for filing and dismissing the

information was one and the same.  The government had a singular aim: to extend the statute of limitations.    The majority isolates the district court's finding that the government dismissed the case "because" B.G.G. did not consent to proceed without an indictment.  Maj. Op. at26.  But this misses the forest for the trees.  The filing and the dismissal are inextricable.  Without the filing there can be no dismissal and without dismissal the government cannot extend the statute of limitations under § 3288.  The filing had no independent significance beyond facilitating the dismissal because the government filed the information fully anticipating that B.G.G. would not consent to prosecution by information.[2]  Without that consent the filing must have been dismissed.  Given their codependent nature, it is understandable that the district court would have spoken about the government's motivations for filing and dismissing the information interchangeably.

Second, and more fundamentally, the district court did not ignore the prosecution's reason for dismissing the information.  Rather, the district court discussed *both* the reason for filing *and* for dismissing the information.  The district court's order stated, for example, that "*by seeking dismissal* on September 2, 2020—two days after the statute of limitations expired—the Government

---

[2] In their motion to seal, filed contemporaneously with the information, the government noted that "[u]pon information and belief, the defendant will not consent to proceed by way of information."  In their supplemental briefing they conceded "the government did anticipate the defendant would not consent."

ensured that its proposed Order of Dismissal would be entered at a time that would toll the limitations period . . . ." It was "no mystery," the court went on, "that the Government strategically timed its filing of the Information *and Order of Dismissal* 'to protect against the running of the statute of limitations' in light of the Southern District of Florida's temporary suspension of grand juries due to the coronavirus pandemic." The court reiterated that the government "*move[d] for the relief of dismissal* without prejudice in order to extend the statute of limitations." And the court made clear that "[a]llowing such tactics, wherein the Government *seeks dismissal of the Information* solely to safeguard its ability to charge Defendant at a later date, would not serve the strong public interest of upholding statutory and constitutional protections." I could go on.

True, the district court needn't have also discussed the government's reasons for filing the information. In this particular instance, doing so clearly highlighted the reasons for terminating the case. Regardless, the district court made the requisite findings regarding the government's reasons for seeking dismissal, and the record supports those findings. As a result, there is no basis for reversal here.

The majority compares page counts and faults the district court for discussing "why, under section 3282 and rule 7(b), the information was not 'instituted' for statute-of-limitation purposes." Maj. Op. at 27. The majority suggests this was "exactly the error the district court made . . . in *Rinaldi*." Maj. Op. at 27. However,

21-10165                WILSON, J., Dissenting                11

far from violating *Rinaldi*, the district court's discussion of the statutory scheme under section 3282 only serves to buttress the implicit finding that the dismissal was sought in bad faith. The district court's explanation of its actions speaks for itself:

> The framing of [the section 3282] inquiry in the context of a [r]ule 48 dismissal is unusual. . . . [H]owever, in furtherance of its strategy, the Government moves for the relief of dismissal without prejudice in order to extend the statute of limitations. . . . Were I to grant the Government's request, I would enable and invite an action I believe to be unlawful. Dismissal without prejudice would also be futile given my finding that, as a matter of law, the statute of limitations has expired. But for [r]ule 48 and § 3288, I would have simply ignored the Information as a nullity.

The fact that the initial filing was a legal nullity and insufficient to "institute" a prosecution under section 3282 underscores, again, that the act of filing the information existed only to allow for its immediate dismissal under section 3288. One singular bad-faith gambit, consummated in two-steps.

The majority offers a final purported rationale for reversal: that a pair of old Fifth Circuit cases dictates that dismissal should not have been with prejudice. *See United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973); *United States v. Pitts*, 569 F.2d 343, 347 (5th Cir. 1978). The majority cites these cases for the proposition that a rule 48(a) dismissal is *always* without prejudice—regardless,

12                      WILSON, J., Dissenting                      21-10165

apparently, of the government's bad faith or improper motives. But neither case says that. Those cases, unremarkably, state the general rule that dismissals under rule (48)(a) are without prejudice. Neither *Pitts* nor *Davis* addressed whether district courts have discretion to dismiss with prejudice under rule 48(a) when the government engages in bad faith. That issue was not presented.

And in cases following *Pitts* and *Davis*, we have made clear that: "*Generally, unless a contrary intent is clearly expressed*, rule 48(a) dismissals are without prejudice." *Matta*, 937 F.2d at 568 (emphasis added) (citing *Davis*, 487 F.2d at 118).[3] In short, dismissal is *generally* without prejudice. But when the government has acted in bad faith and demonstrated a purpose to harass, the district court can dismiss *with* prejudice. Because that's what happened here, the district court did not err.

The majority contends, "*Matta* . . . is referring to *the government's* clearly expressed intent." (emphasis added) However, this is contradicted by the posture of *Matta*, *Pitts*, and *Davis*. All three cases were appeals from second prosecutions, and denials of the defendants' motions to dismiss the second prosecutions. These cases only arose because the original rule 48(a) dismissals of the first prosecutions did not state whether they were with or without

---

[3] The majority argues that this rule from *Matta* is dicta because there was no "contrary intent" in *Matta* to support that court creating an exception to what the majority sees as the rule from *Davis-Pitts*. Maj. Op. at 29. If anything, the absolute rule the majority extracts from *Davis-Pitts* was dicta because, as noted previously, the issue was not presented in either case.

prejudice. *See, e.g., Pitts*, 569 F.2d 346 n.3 ("[I]n the formal order, issued from the bench, the indictment was not dismissed with prejudice."). Thus, the district courts presiding over the second prosecutions were forced to decide whether the ambiguous rule 48(a) dismissals barred the second prosecutions. This was an act of backwards looking gap-filling on the part of the second prosecution district courts and the courts of appeals. *Matta*'s "unless a contrary intent is clearly expressed" rule makes the most sense in this context.

Reading *Matta* as the majority does creates a Catch-22 repugnant to the constitutional protections afforded criminal defendants. Under the majority's reasoning, the district court has two options: it "may give the government permission to dismiss . . . on the terms it sought, or the court can withhold permission." Maj. Op. at 30. If the district court properly finds bad faith on the part of the government, then the *only* option, under the majority's reasoning, is to deny the government's motion to dismiss and continue the prosecution. But in a case like this, the information must be dismissed because the defendant did not consent to be tried without an indictment. What is the district court to do? If on the one hand it refuses to dismiss and keeps the prosecution ongoing, it subjects the criminal defendant to jeopardy in spite of their Fifth Amendment right to be tried by grand jury indictment. If on the other hand it dismisses the case without prejudice, the court rewards the government's gambit to unilaterally extend the statute of limitations. *Cf. Klopfer v. North Carolina*, 386 U.S. 213, 221–22

(1967) (condemning a North Carolina criminal procedure that allowed the state prosecutor to enter a *nolle prosequi* and toll the statute of limitations indefinitely as a derogation of the Sixth Amendment's Speedy Trial guarantee).

It remains to be seen whether the government's gambit will pay off. As the majority recognizes, B.G.G. will be free to challenge any forthcoming indictment based on the statute of limitations. But for the reasons I've explained, it shouldn't come to that. There is no question that the government sought to dismiss the information to achieve a tactical advantage in derogation of B.G.G.'s rights—the very definition of bad faith in this context. *See Dyal*, 868 F.2d at 429. And the government's plan to "charg[e], dismiss[ ], and recharg[e]" B.G.G. is the exact conduct the Supreme Court has said constitutes harassment in this context. *See Rinaldi*, 434 U.S. at 29 n.15.

Pandemic or not, the district court was right to root out these corner-cutting tactics. As the Supreme Court recently reminded us, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). I respectfully dissent.