# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 03-3037

IN RE: UNITED STATES OF AMERICA,

*Petitioner.*

---

Petition for a Writ of Mandamus to the United States
District Court for the Western District of Wisconsin.
No. 03 CR 2—**John C. Shabaz**, *Judge.*

---

SUBMITTED SEPTEMBER 2, 2003—DECIDED SEPTEMBER 16, 2003

---

Before POSNER, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Kenneth Bitsky, the defendant in the case that gives rise to the government's petition for mandamus, was indicted on one count of violating 18 U.S.C. § 242 (deprivation of civil rights under color of law) and two counts of violating 18 U.S.C. § 1512(b)(3) (obstruction of justice). According to the indictment, Bitsky, a Wisconsin police officer, had assaulted an arrested person and had then tried to induce another officer to write a false arrest report justifying Bitsky's use of force and had threatened another officer in an effort to prevent her from informing on him. The government and Bitsky made a plea agreement under which he would plead guilty to one of the obstruction of justice counts and the government would dismiss the other two counts. At the sentencing hearing the district judge asked the prosecutor why the civil rights count, for

which the sentencing range was 24 to 30 months, had been dropped, when the sentencing range for the count to which Bitsky had agreed to plead guilty was only 6 to 12 months. (Both ranges were computed on the basis of a two-level decrease in the base offense level for acceptance of responsibility.) The prosecutor explained that his main aim was to get a felony conviction, which would bar Bitsky from remaining in law enforcement, without the risk of a trial, which might result in Bitsky's being acquitted. The judge rejected the plea agreement on the ground that the one count of which Bitsky would be convicted if the agreement were accepted did not reflect the gravity of his actual offense. U.S.S.G. § 6B1.2(a).

Bitsky decided to go ahead and plead guilty even though he no longer had the protection of a plea agreement. The judge accepted his plea and, after denying him an acceptance-of-responsibility deduction, sentenced him to 16 months in prison, the top of the guideline range without such a deduction. The government then filed a motion to dismiss the other two counts. The district court dismissed the other obstruction of justice count, but refused to dismiss the civil rights count and instead appointed a private lawyer to prosecute that count. The government asks us to issue a writ of mandamus commanding the district judge to dismiss that count as well and to rescind the appointment of the prosecutor. The judge has responded, stating as his reason for refusing to dismiss the civil rights count and for appointing a private lawyer to prosecute it that the government was trying to circumvent his sentencing authority because it considered the sentence that he would have imposed had Bitsky been convicted of the civil rights violation excessive, even though it would have been consistent with the sentencing guidelines.

No statute authorizes the government to appeal from a denial of the dismissal of a count or case, but we do not think that there can be much doubt that such relief is available by way of mandamus. *In re Richards*, 213 F.3d 773, 789 n. 9 (3d Cir. 2000), suggests that mandamus would be appropriate if the district court refused to grant the government's motion to dismiss, and *Hilbert v. Dooling*, 476 F.2d 355, 362 (2d Cir. 1973), granted mandamus to compel the district court to grant the defendant's motion to dismiss a charge because the government had violated a circuit rule requiring prompt disposition of a criminal charge. The historic and still the central function of mandamus is to confine officials within the boundaries of their authorized powers, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); *United States v. Spilotro*, 884 F.2d 1003, 1007 (7th Cir. 1989); *Maloney v. Plunkett*, 854 F.2d 152, 154 (7th Cir. 1988); *United States v. Davis*, 285 F.3d 378 (5th Cir. 2002), and in our system of criminal justice, unlike that of some foreign nations, the authorized powers of federal judges do not include the power to prosecute crimes. *Wayte v. United States*, 470 U.S. 598, 607 (1985); *United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002). "A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them." *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir. 1992).

There is an exception for criminal contempts of court, *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800-01 (1987); *United States v. Vlahos*, 33 F.3d 758, 762 (7th Cir. 1994), but it is irrelevant to this case. The theory behind the exception is that the judiciary should not be dependent on the executive to assure compliance with its orders; but no judicial order was flouted in this case. In refusing to dismiss the civil rights count against Bitsky, the district judge was telling the government which crimes to prosecute, and, as

these were not crimes against the judiciary, in doing so he stepped outside the boundaries of his authorized powers. See also *United States v. Martin, supra,* 287 F.3d at 623; *United States v. Jacobo-Zavala,* 241 F.3d 1009, 1014 (8th Cir. 2001); *United States v. Garcia-Valenzuela,* 232 F.3d 1003, 1007-08 (9th Cir. 2000); *United States v. Smith,* 55 F.3d 157, 159 (4th Cir. 1995).

It is true that Rule 48(a) of the Federal Rules of Criminal Procedure requires leave of court for the government to dismiss an indictment, information, or complaint—or, we add, a single count of such a charging document. *United States v. Delagarza,* 650 F.2d 1166, 1167 (10th Cir. 1981) (per curiam); 3A Charles Alan Wright, *Federal Practice and Procedure* § 811 (2d ed. 1982). But the purpose, at least the principal purpose, is to protect a defendant from the government's harassing him by repeatedly filing charges and then dismissing them before they are adjudicated. *Rinaldi v. United States,* 434 U.S. 22, 29 n. 15 (1977) (per curiam); *In re Richards, supra,* 213 F.3d at 787; *United States v. Palomares,* 119 F.3d 556, 558 (7th Cir. 1997); *United States v. Gonzalez,* 58 F.3d 459, 461 (9th Cir. 1995); *United States v. Hamm,* 659 F.2d 624, 628 (5th Cir. Oct. 1981) (en banc). In such a case the judge might rightly condition dismissal on its being with prejudice. *United States v. Derr,* 726 F.2d 617, 619 (10th Cir. 1984); *United States v. Towill,* 548 F.2d 1363, 1369-70 (9th Cir. 1977). There is no issue of that sort here. The government wants to dismiss the civil rights count with prejudice, and that is what Bitsky wants as well. The district judge simply disagrees with the Justice Department's exercise of prosecutorial discretion. As he explained in his response to the petition for mandamus, he thinks the government has exaggerated the risk of losing at trial: "the evidence was strong and conviction extremely likely." The judge thus is playing U.S. Attorney. It is no doubt a position that he could fill with distinction, but it is occupied by another person.

We add that this is not a case (not that it would make a difference to our analysis) in which a federal prosecutor is operating without supervision. The filing of a petition for mandamus on behalf of the federal government requires authorization by the Solicitor General of the United States.

We are mindful of speculations in some judicial opinions that a district judge could properly deny a motion to dismiss a criminal charge even though the defendant had agreed to it. These opinions say that such a motion should be denied if it is in bad faith or contrary to the public interest, as where "the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial." *In re Richards, supra*, 123 F.3d at 787. (The "bad faith or contrary to the public interest" formula is also found, though not necessarily in those words, in *Rinaldi v. United States*, 434 U.S. 22, 30 (1977) (per curiam); *United States v. Martin, supra*, 287 F.3d at 623; *United States v. Jacobo-Zavala, supra*, 241 F.3d at 1012-13; *United States v. Garcia-Valenzuela, supra*, 232 F.3d at 1007-08; *United States v. Palomares, supra*, 119 F.3d at 558*; United States v. Smith, supra*, 55 F.3d at 158-59; *United States v. Hamm, supra*, 659 F.2d at 630; *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), and *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973). We are unaware, however, of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis. That is not surprising. The Constitution's "take Care" clause (art. II, § 3) places the power to prosecute in the executive branch, just as Article I places the power to legislate in Congress. A judge could not properly refuse to enforce a statute because he thought the legislators were acting in bad faith or that the statute disserved the public interest; it is hard to see, therefore, how he could properly refuse to dismiss a pros-

ecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest.

The Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government—for example, the government may not make its prosecutorial decisions on racially discriminatory grounds—but they are the limits found in the Constitution and thus do not include "bad faith" and "against the public interest." Custom, limited prosecutorial resources that compel prioritizing prosecutions, federal criminal statutes that overlap with each other and with state criminal statutes, plea bargaining, and the federal sentencing guidelines themselves combine to lodge enormous charging discretion in the Justice Department, to the occasional frustration of judges—yet without giving rise to any judicial remedy. See, e.g., *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979); *The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457 (1868).

Paradoxically, the plenary prosecutorial power of the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches (again, criminal contempt of judicial orders constitutes a limited exception). When a judge assumes the power to prosecute, the number shrinks to two.

Even if a federal judge could properly deny, on the basis of bad faith or contravention of the public interest, a motion to dismiss a criminal charge, it would not follow that he could appoint a prosecutor. Presumably an assistant U.S. attorney who accepts a bribe, wants to go on vacation rather than conduct a trial, etc., is acting alone rather than at the direction or with the approval of the Justice Department, and a different assistant U.S. attorney would continue with the prosecution. In any event, a judge could not possibly

win a confrontation with the executive branch over its refusal to prosecute, since the President has plenary power to pardon a federal offender, U.S. Const. art. II, § 2, cl. 1—even before trial or conviction. *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866).

   The government's petition for mandamus is granted and the district judge is ordered to grant the government's motion to dismiss the civil rights count against Bitsky, and to vacate the appointment of the special prosecutor.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*
