# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-3412

_____

United States of America

*Plaintiff - Appellee*

v.

Tiffany Bernard

*Defendant - Appellant*

_____

No. 21-3417

_____

In re: Tiffany Bernard

*Petitioner*

_____

No. 21-3874

_____

United States of America

*Plaintiff - Appellant*

v.

Tiffany Bernard

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: March 16, 2022
Filed: August 2, 2022
_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

The district court had strong views about what charges fit Tiffany Bernard's crimes. It rejected both her plea agreement and a motion by the government to dismiss four of the five counts in the indictment. The latter ruling went too far, which is why we reverse and remand with instructions to grant the government's motion.

I.

A local fisherman found a seriously injured Josue Alaniz in his car near a South Dakota lake. All Alaniz remembered was that he had given a ride to a woman named Tiffany Bernard, and that the evening had ended with a brutal beating at the hands of several men. Bernard denied that she was involved, so the investigation moved slowly at first.

Eventually, however, Bernard changed her story. She explained how she had tricked Alaniz into letting her drive him to a lake, where three men were waiting to rob him. She also provided the names of her three accomplices but omitted a key fact: she had put the plan together and set it in motion.

From there, the investigation picked up steam.  The government charged each member of the group with five crimes,[1] but Bernard received a deal: she could plead guilty to robbery in exchange for the dismissal of the other charges.  *See* 18 U.S.C. §§ 2, 1153, 2111.  Bernard completed the first step by pleading guilty to robbery.  At the second step, however, the district court refused to dismiss the remaining charges.

It instead scheduled an evidentiary hearing for Alaniz and his wife to testify.  After listening to their testimony, the district court announced that it had decided to reject the plea agreement.  In its view, a statutory-maximum sentence for robbery "d[id] not adequately reflect the seriousness of the crimes committed against" Alaniz.

Despite the district court's actions, the government remained committed to holding up its end of the bargain.  After the court set a trial date on the remaining four counts, the government moved to dismiss them.  The court once again stood in the way, explaining that a dismissal would be "clearly contrary to the manifest public interest."

Everyone appealed from there.  Bernard appealed the denial of the government's motion and filed a petition for a writ of mandamus.  And after receiving an extension, the government appealed too.  We consolidated all three cases and appointed *amicus curiae*[2] to represent the district court's view.

---

[1]Aiding and abetting assault with intent to commit murder, 18 U.S.C. §§ 2, 113(a)(1), 1153; aiding and abetting maiming, *id.* §§ 2, 114, 1153; aiding and abetting robbery, *id.* §§ 2, 1153, 2111; aiding and abetting assault with a dangerous weapon, *id.* §§ 2, 113(a)(3), 1153; and aiding and abetting assault resulting in serious bodily injury, *id.* §§ 2, 113(a)(6), 1153.

[2]We thank Landon Magnusson of Withers, Brant, Igoe & Mullennix, P.C. for his able briefing and argument.

II.

Our first task is to determine whether we have appellate jurisdiction. As the government points out, the collateral-order doctrine provides the path forward. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949).

An order is both collateral and immediately appealable if it "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted). Although few categories of interlocutory rulings fall within the collateral-order doctrine, the type of order in this case is one of them. *See United States v. Dupris*, 664 F.2d 169, 173–74 (8th Cir. 1981) (holding that the denial of a motion to dismiss filed by the government is immediately appealable under the collateral-order doctrine (citing Fed. R. Crim. P. 48(a)).

*Amicus* disagrees, but only by recharacterizing what the district court did. In his view, the court *just* reviewed and "rejected" Bernard's plea agreement, which it is expressly permitted to do under a separate criminal rule. *See* Fed. R. Crim. P. 11(c)(3)(A) (providing that if a plea agreement specifies that part of the government's obligation is to move to dismiss other charges, "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report"). But we cannot ignore what the court did next: deny the government's motion to dismiss the remaining charges. *Amicus* may well be right that the first act—rejection of the plea agreement—is not immediately appealable under the collateral-order doctrine. But *Dupris* tells us that the second act—denial of the government's motion to dismiss—is. And the second act is what the parties are appealing.[3]

---

[3]Our appellate jurisdiction over the government's appeal makes it unnecessary to decide whether we would also have jurisdiction over anything Bernard has filed. *See United States v. MacConnell*, 868 F.2d 281, 285 (8th Cir. 1989). After all, the

-4-

Having determined there is jurisdiction, we now turn to the merits. The parties frame the issue around Federal Rule of Criminal Procedure 48(a), which permits the government, "with leave of [the] court," to dismiss "an indictment, information, or complaint." Although the text appears to cover the dismissal of the *entire* indictment, not just a *part* of it, we will assume without deciding that it covers a partial dismissal too.[4]

Even if the government had to get "leave of [the] court," it is no blank check for second-guessing charging decisions. To the contrary, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding . . . whether to dismiss a proceeding once brought." *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1012 (8th Cir. 2001) (citation omitted). For that reason, although the district court has some discretion in this area, it "is sharply limited by the separation of powers balance inherent in Rule 48(a)." *Id.* at 1011–12 (explaining that we review the district court's decision for an abuse of discretion).

---

parties are both seeking the same thing: for the district court to dismiss the remaining charges against Bernard and proceed to sentencing on the robbery count.

[4]As far as we can tell, we have only assumed that Rule 48(a) applies in this situation. *See United States v. Williams*, 720 F.3d 674, 702–04 (8th Cir. 2013); *United States v. Sprofera*, 299 F.3d 725, 726–27 (8th Cir. 2002); *United States v. Rush*, 240 F.3d 729, 730–31 (8th Cir. 2001) (per curiam). There is a good argument that, in the absence of any language in Rule 48(a) to the contrary, a situation like this one is covered by the common-law rule that the government has "an almost unfettered right to enter a nolle prosequi" on individual counts without having to ask the court for permission. *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000); *see also In re United States*, 345 F.3d 450, 452 (7th Cir. 2003) ("It is true that [Rule 48(a)] requires leave of the court for the government to dismiss an indictment, information, or complaint—or, *we add*, a single count of a charging document." (emphasis added)).

Courts can exercise their discretion to withhold leave in only "the rarest of cases." *In re Richards*, 213 F.3d 773, 786 (3d Cir. 2000). One is when there has been "prosecutorial harassment," including a pattern of "charging, dismissing, and recharging" the defendant. *Jacobo-Zavala*, 241 F.3d at 1012 (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)). There is no evidence of harassment here, only cooperation, so the only other possibility is that dismissal of the charges "would be *clearly* contrary to manifest public interest." *Id.* at 1013 (emphasis added) (quotation marks omitted); *see also United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000) (suggesting that "[w]here a defendant consents to the government's mo[tion] to dismiss, it is not clear that the district court has any discretion to deny the government's motion").

For a dismissal to be "clearly contrary to manifest public interest," the prosecutor must have had an illegitimate motive rising to the level of bad faith. *See United States v. Rush*, 240 F.3d 729, 730–31 (8th Cir. 2001) (per curiam) (quotation marks omitted); *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995). Examples include the "acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled." *Smith*, 55 F.3d at 159. Anything less is not enough. *See In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (explaining that district courts do not get to "play[] U.S. Attorney").

Here, the district court merely "disagreed with the prosecutor's assessment of what penalty the defendant[] ought to face." *Jacobo-Zavala*, 241 F.3d at 1014. Rather than addressing whether the prosecutor acted in bad faith, the court just listed the reasons it thought Bernard was getting off too easy: she was "very dangerous" and "by far the most culpable"; Alaniz suffered life-threatening injuries; and a "conviction for robbery alone strip[ped] the [c]ourt of any ability to sentence [her] to a just punishment." These may be important factors to consider at sentencing, but they are not reasons to interfere with the government's charging decisions, no matter how much the court may disagree with them.

## IV.

We accordingly reverse the decision of the district court and remand with instructions to grant the government's motion.

_____