# United States Court of Appeals
### For the Eighth Circuit
_____

No. 22-3326
_____

Reporters Committee for Freedom of the Press

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

------------------------------

Media Organizations; Electronic Frontier Foundation; American Civil Liberties Union

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 17, 2023
Filed: March 1, 2024
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

The Reporters Committee for Freedom of the Press, a nonprofit organization dedicated to promoting the interests of journalists, filed an application seeking to unseal court filings from federal criminal investigations. After months of back-and-

forth negotiations between the Reporters Committee, the clerk of court, and the United States Attorney's Office, the district court[1] dismissed for lack of jurisdiction. We affirm.

## I.

The Reporters Committee filed an application in the District of Minnesota with a single goal in mind: unsealing electronic-surveillance filings. *See* 18 U.S.C. §§ 2701–13 (Stored Communications Act). But standing in the way was a local rule requiring federal law-enforcement officials to file them under seal. *See* D. Minn. LR 49.1(c)(1)(B).

The district court was open to the request, but thought it was too broad. The main reason was that the "vast majority" of the materials requested become unsealed after six months.[2] So the real dispute, at least in the court's view, was over the "pretty small number" of filings that remain under seal, instead of "a bunch of stuff that doesn't exist." Thinking there could be room for agreement, the court instructed the United States Attorney's Office and the Reporters Committee to work with the clerk of court, hammer out any "disagree[ments]," and "negotiate[]" a possible solution.

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

[2]That is, unless the government "comes in and shows a good reason" for keeping them sealed. Although the district court did not explain what reasons would be good enough, keeping them from public view can protect ongoing investigations and the privacy of the individuals involved. *See, e.g.*, *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (concluding that a district court could seal documents "describ[ing] in considerable detail the nature, scope, and direction" of a government investigation, including the "individuals and specific projects involved").

Months of negotiations worked out some of the issues. Everyone agreed that search warrants and other electronic-surveillance requests should be "flag[ged]" on the docket. They also agreed on a notice on the District of Minnesota website explaining that members of the public could view unsealed warrants and surveillance orders at the clerk's office. But there was not much progress on docketing and unsealing what remained, so the Reporters Committee headed back to court.

It filed an amended application seeking an order directing the clerk of court, who was not a party, to change her practices in two ways. The first was to *presumptively* unseal warrants and related documents after 180 days. The other was to begin docketing the government's applications for electronic surveillance regardless of whether a judge granted them. *See* Fed. R. Crim. P. 41 (allowing the government to request electronic-surveillance and tracking-device warrants); 18 U.S.C. §§ 2703(a)–(b), 3117, 3123 (same). These duties arose, according to the Reporters Committee, under the First Amendment and the common-law right of access to public records and documents. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–80 (1980) (explaining how the First Amendment applies); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978) (discussing the scope of the common-law right).

The district court never reached the merits. It instead concluded that the Reporters Committee lacked standing because all it had was a "generalized, abstract interest" in unsealing the records. And such an interest could not provide jurisdiction in federal court.

## II.

Federal courts only have jurisdiction over "[c]ases" or "[c]ontroversies." U.S. Const. Art. III. Usually, they are "adversary proceeding[s]" with "adverse parties." *In re Hoefflin*, 715 F.2d 1309, 1310 (8th Cir. 1983); *see Fin. Guar. Ins. Co. v. City of Fayetteville*, 943 F.2d 925, 929 (8th Cir. 1991) ("The adversity requirement [e]nsures that a court is presented with opposing parties that are fairly motivated to

-3-

diligently and effectively present the merits of all sides of the issues . . . .").  They also require "litigants [with] a personal stake in the suit."  *Camreta v. Green*, 563 U.S. 692, 701 (2011) (citation omitted).

## A.

Adversity is missing here.  The Reporters Committee filed an "application" with the district court, but it did not name anyone or anything[3] as a defendant.  It did not sue the United States Attorney for the electronic-surveillance materials in his possession, nor did it argue that he had an obligation to disclose them.  It is true that, at one point, the district court changed the caption to read "*Reporters Committee . . . v. United States of America*," but the United States never officially intervened.  And when the Reporters Committee finally amended its application, it did not mention or seek relief against the United States or the United States Attorney.

Rather, it wanted something from the district court: "[o]rder[s] directing the [c]lerk of [c]ourt" to unseal and docket certain materials.  But the Reporters Committee did not name the clerk of court as a defendant and seek to "enjoin" her allegedly "unconstitutional action[]" of keeping certain electronic-surveillance filings sealed.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (recognizing that plaintiffs can seek prospective injunctive relief against federal officials).  *But cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 39–40 (2021) (explaining that "state-court clerks who docket . . . disputes" were not "adverse").  Nor did it seek mandamus against the clerk of court or the district court, *see In re Iowa Freedom of Info. Council*, 724 F.2d 658, 660 (8th Cir. 1983), the latter of which would have nominally "ma[de] the judge a litigant," *Ex parte Fahey*, 332 U.S. 258,

---

[3]Sometimes the "opposing party" will be property rather than a person or organization.  *See generally, e.g.*, *United States v. One Parcel of Prop. Located at Tracts 10 & 11*, 51 F.3d 117 (8th Cir. 1995).  In rem actions, as they are called, use "[t]he fiction that the thing [subject to forfeiture] is primarily considered the offender." *Austin v. United States*, 509 U.S. 602, 615 (1993) (citation omitted).  But here, there is no defendant at all, fictional or otherwise.

260 (1947). Any of these alternatives would have cured the lack of adversity, even if they might have presented other difficulties.

To be sure, courts have sometimes been willing to relax adversity on *appeal*. Consider *United States v. Windsor*, in which the Supreme Court concluded that *amicus* briefing provided the necessary adversity when the parties themselves agreed on the answer to a legal question. 570 U.S. 744, 757–62 (2013); *see also id.* at 786 (Scalia, J., dissenting) ("[T]hat a case between friendly parties can be entertained so long as adversarial presentation . . . is assured by the participation of *amici curiae* . . . effects a breathtaking revolution in our Article III jurisprudence." (citation omitted)). We have followed this approach ourselves in two recent cases. *See United States v. Stowell*, 82 F.4th 607 (8th Cir. 2023) (en banc); *United States v. Bernard*, 42 F.4th 905, 908 (8th Cir. 2022).

Those cases, however, involved *amici* advocating on behalf of parties who were already part of the litigation. In *Windsor*, for example, after the Solicitor General "confesse[d] error" and agreed with the plaintiff that the Defense of Marriage Act was unconstitutional, the *amicus* defended the tax-related financial interest of the United States. 570 U.S. at 755–60. Or take *Bernard*, in which an *amicus* nominally represented the district court's position in a mandamus proceeding when both the defendant and the United States agreed that the court should have allowed a prosecutor to dismiss a count from the indictment. 42 F.4th at 908. In each, the *amicus* advocated on behalf of a party with a continuing interest in the outcome.

Without a defendant in this case, it is not clear what role the United States played. *See In re Application for Exemption from Elec. Pub. Access Fees by Jennifer Gollan and Shane Shifflett*, 728 F.3d 1033, 1038 n.3 (9th Cir. 2013) (describing "judicial business" as "pursued by counterparties"). Did it represent its own interests? Or was it advocating on behalf of someone else, like the clerk of court or the district court? Perhaps all three? It is hard to know because the Reporters Committee requested relief without suing anyone who could provide it. It brought

an action without adversity, typically required for "federal-court adjudication."[4]  *See Camreta*, 563 U.S. at 701 (citation omitted).

B.

Adversity is not all that is missing.  Closely related is the idea of standing, and here, the Reporters Committee failed to establish that it suffered a "concrete" and "particularized" injury.  *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021) (noting that a "plaintiff [who] has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts" does not have standing).  As the district court put it, having a desire to unseal electronic-surveillance materials on the chance that "some unspecified person may some[d]ay want to review them" is hardly concrete.  Such an injury, after all, has yet to "actually exist."  *Spokeo*, 578 U.S. at 340.

The Reporters Committee disagrees on two grounds.  The first is that, "like all members of the public and press," it claims to have "a strong interest in observing and understanding" what happens in federal court.  Maybe so, but without "concrete plans" to review or use the materials, its injury is no different than every other member of the public. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).  A party cannot bring an anticipatory lawsuit to head off an injury that *could* happen some day. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Its other argument, first raised in its appellate reply brief, gets closer, but comes too late.  The Reporters Committee now claims that, "[b]efore filing its initial [a]pplication, [it] tried to access [electronic-surveillance] records . . . via CM/ECF" and could not view them.  We rarely consider arguments raised for the first time on

---

[4]There are some exceptions.  *See Ayestas v. Davis*, 138 S. Ct. 1080, 1090–91 (2018) (collecting cases).  Among them are ex parte proceedings, like deciding whether to issue a search or arrest warrant. *See id.* at 1091.  No one suggests that an exception applies here. *See id.* ("*[E]x parte* motions are disfavored.").

appeal.  *See Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019).  It is even rarer for us to address an argument that a party first raises in a reply brief.  *See Sanchez v. Taggart*, 144 F.3d 1154, 1157 (8th Cir. 1998) ("declin[ing] to consider new facts or legal theories raised in [a] reply brief").  This case is no exception, especially because the Reporters Committee had an obligation to establish why it had standing to sue from the "outset."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

It is no answer to say that it once obliquely referenced the problem during a status conference.  The Reporters Committee directs us to the following statement by counsel: "when a member of the public tries to access the underlying materials in an unsealed warrant case, there's a warning that says you do not have permission to view this document."  No one would interpret this statement as anything more than a general description of the problem it was trying to remedy.  It does not specify *who* tried to access the materials, *when* they tried to do it, or *what* relationship they had to the Reporters Committee.[5]  Missing is nearly every one of the ingredients necessary for standing.  *See Delorme v. United States*, 354 F.3d 810, 815–16 (8th Cir. 2004) (holding that pleadings that "do not indicate with any specificity who suffered the alleged injury," "the nature of any actual injury suffered," or the representative plaintiff's "connection" to an injured party are deficient).

## III.

We accordingly affirm the judgment of the district court.

_____

_____

[5]The absence of these details means we do not need to decide whether the Reporters Committee suffered "downstream consequences from failing to receive the required information."  *TransUnion*, 141 S. Ct. at 2214 (citation omitted); *see also id.* ("An asserted informational injury that causes no adverse effects cannot satisfy Article III." (citation omitted)).  Nor do we have to address whether the district court asked too much by requiring the Reporters Committee to have *evidence* supporting its jurisdictional allegations at such an early stage.  *See Lujan*, 504 U.S. at 561 (requiring a party to support "each element" of standing through "the manner and degree of evidence required at the successive stages of litigation").