[Cite as *State v. Glover*, 2026-Ohio-1332.]

## IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF WARREN,<br><br>                Plaintiff-Appellant,<br><br>- vs -<br><br>CHRISTOPHER SEAN GLOVER,<br><br>                Defendant-Appellee. | CASE NO. 2025-T-0086<br><br><br>Criminal Appeal from the<br>Warren Municipal Court<br><br><br>Trial Court No. 2025 CRB 001807 |

## OPINION AND JUDGMENT ENTRY

Decided: April 13, 2026
Judgment: Reversed

*Edward C. Czopur*, P.O. Box 3313, 407 Boardman-Canfield Road, Suite 3313, Youngstown, OH 44503 (For Plaintiff-Appellant).

*Elizabeth Miller*, Ohio Public Defender, and *Melissa Seabolt*, Assistant Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215 (For Defendant-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellant, the State of Ohio/City of Warren ("the State"), appeals the interlocutory judgment of the Warren Municipal Court, overruling its motion to dismiss the charge of aggravated menacing against appellee, Christopher Sean Glover. The State maintains, and Mr. Glover agrees, that the trial court erred when it determined the State lacked good cause to dismiss the charge based upon insufficient evidence. We conclude, under the circumstances of this matter, the trial court abused its discretion when it overruled the State's motion. The phrase "abuse of discretion" is one of legal art, implying

a judgment exercised which neither comports neither with reason, nor the record. *See, e.g., State v. Marcellino*, 2019-Ohio-4837, ¶ 23 (11th Dist.).

{¶2} On October 5, 2025, Warren Township officers responded to a 911 call from an unidentified female for an unknown disturbance. Mr. Glover was apparently staying at a friend's home which is near the residence of the alleged victim ("A.H."). Officers arrived and noticed Mr. Glover arguing with A.H. and her father ("C.H."). Mr. Glover subsequently walked to his friend's home, entered, and closed the door.

{¶3} Officers interviewed A.H. and C.H. and learned that A.H. had a civil protection order against Mr. Glover and, during the exchange between C.H. and Mr. Glover, the latter revealed "from his hoodie pocket the butt of a gun." According to statements at the scene, C.H. was not in fear of Mr. Glover and that, after he "show[ed] me he's armed," "he walked away . . . ." Apparently, C.H. confronted Mr. Glover to "deescalate" any potential situation, and he had no fear of Mr. Glover because "Mr. Glover and [C.H.'s] daughter are constantly engaged in altercations, and [C.H.] just wanted them separated at that point." During her interview with responders, A.H. also represented she did not experience any fear of Mr. Glover during the encounter.

{¶4} During a pretrial hearing, the prosecutor interviewed A.H. regarding the incident. According to the State, "[w]e took her into the office with us, and I was very direct and clear with her, and . . . what she told us is that she did not see a gun. She never saw a gun. She believes when her father, [C.H.,] approached Mr. Glover in the roadway, she believes she was inside the house at the time." A.H. explained that she subsequently exited the house due to her concern that C.H. and Mr. Glover were having a confrontation. A.H. emphasized, however, "[s]he didn't see the gun." The record suggests that it was at

Case No. 2025-T-0086

this point Mr. Glover retreated from the front of A.H.'s home and returned to his friend's residence.

{¶5}   The responding officers filed a report charging Mr. Glover with violating a protection order, in violation of R.C. 2919.27(A) and (B), a misdemeanor of the first degree. Additionally, an unnamed prosecutor, after speaking with officers about the incident, elected to file an additional charge of aggravated menacing, in violation or R.C. 2903.21, a misdemeanor of the first degree. The victim listed in the charging instrument was A.H.

{¶6}   On November 12, 2025, the State filed a motion for leave to dismiss the aggravated menacing charge, claiming there was insufficient evidence to establish the charge beyond a reasonable doubt. In its motion, the State asserted that the alleged victim of the crime, A.H., admitted she never experienced fear during the incident and, further, never observed a firearm. Accordingly, the State submitted it could not establish that Mr. Glover knowingly caused A.H. to believe he would cause her serious physical harm. Although C.H. observed the firearm, he also asserted he never experienced fear, and, regardless, Mr. Glover was never charged with aggravated menacing against C.H.

{¶7}   The trial court held an initial hearing on the motion for leave to dismiss on November 13, 2025. Counsel for Mr. Glover joined the request for leave to dismiss. The trial judge, however, denied the request stating that she felt "uncomfortable" dismissing an aggravated menacing charge where a firearm is involved. The trial court specifically maintained:

> [T]he mens rea here is knowing, and it's either knowledge that your actions could probably cause a certain result or an awareness of the possibility or probability that the actions would cause a certain result. So what you're telling me is that

Case No. 2025-T-0086

there was a circumstance where somebody held up their shirt in an argument, showed there was a gun, and I've looked at all the case law on this. And while a victim can take a witness stand and say, I wasn't really afraid, you look at all of the surrounding circumstances; such as, was a 911 call placed? Was there - - you know, the conduct of the individuals, and so I'm looking at this circumstance and I am, quite honestly, very uncomfortable outright dismissing this charge for good cause when what you're telling me is - - I don't think that it really rises to the level of good cause.

{¶8} The trial court recognized a different prosecutor elected to file the aggravated menacing charge and advised the State and defense to meet and continue to discuss the issue. The trial court also suggested that the State could amend the charge to include C.H. as a victim. From the bench, the trial court observed that "the prosecutor can review a case and change charges. They can add charges." The State responded that, under the circumstances of the underlying charge: "The threatening behavior [A.H.] wasn't present for. So if this is while [Mr. Glover's] arguing with [A.H.] and some threat is made but directed at [C.H.], that may be a different ball game, but it's not. It's a totally different series of acts . . . ." The State emphasized that the trial was scheduled to proceed against Mr. Glover. The State further submitted that

I don't know what information the prosecutor bringing it in had at the time. I know that the only thing they would have had available to them is a police report with no indication of any threats made and an officer who delivered that police report wasn't on scene. I know that I have two officers on scene who will tell me they didn't find there to be aggravated menacing.

{¶9} Notwithstanding this statement, the trial court advised the prosecutor that "with regard to changing the name of a victim in the matter, that's certainly something that's able to be done, and I believe it's under Criminal Rule 7, allows the name to be

Case No. 2025-T-0086

changed for a victim. And what was presented to me and what was presented to me previous than this week [sic] was that it was a different victim."

{¶10} After proceedings concluded, the parties reconvened on November 17, 2025, for an additional pretrial on the request for leave to dismiss. During that proceeding, the trial court conclusively determined that it found no good cause to dismiss the aggravated menacing charge. The trial court cited *Lakewood v. Pfeifer*, 61 Ohio Misc.2d 704 (1991), a municipal court case that denied a prosecutor's request for leave to dismiss a domestic violence charge where the prosecutor sought dismissal "without any supporting factual statements or evidence." *Id.* at 709. The trial court determined that such "a single conclusory legal statement, without factual information, does not provide the court with a basis for making a decision." *Id.* The court in *Pfeifer* underscored that the prosecutor failed to offer "any reason for dismissal other than 'insufficient evidence' without elaboration." *Id.* at 710. The court pointed out that its

> decision to overrule the motion to dismiss in the present case should not be taken as the court's view on the innocence or guilt of the defendant. Not only has no evidence been presented in this case, but, further, no factual recitation of the incident which gave rise to this case has been given to the court. Moreover, by asserting insufficient evidence, without elaboration, the court is unaware if the lack of evidence is due to a missing element of the offense, such as the complaining witness not being a member of the defendant's household for the purposes of R.C. 2919.25, the reluctancy of the complaining witness to go forward, or merely the prosecutor's lack of belief of the complaining witness.

*Pfeifer* at 711.

{¶11} Relying primarily on *Pfeifer*, the trial court in the underlying matter concluded it lacked good cause to grant the request to dismiss the aggravated menacing charge alleging A.H. as a victim. The State filed the instant interlocutory appeal, pursuant

Case No. 2025-T-0086

to R.C. 2945.67(A) and App.R. 5(C). This court granted the State's leave to file, and it now assigns the following as error:

{¶12} "The trial court abused its discretion when it denied leave to the City to dismiss the aggravated menacing charge after the City showed 'good cause' for dismissal."

{¶13} This matter involves the interplay of the respective roles of two separate but co-equal branches of our government. "Like the federal Constitution, the Ohio Constitution creates a system of separation of powers." *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors,* 2022-Ohio-4677, ¶ 30. "The 'separation of powers is designed to preserve the liberty of all people.'" *Id.* at ¶ 31, quoting *Collins v. Yellen*, 594 U.S. 220, 245 (2021). Without the separation of powers ""there can be no liberty, where the legislative and executive powers are united in the same person, or body of magistrates;" or, "if the power of judging, be not separated from the legislative and executive powers.""" *TWISM Ents.* at ¶ 31, quoting The Federalist No. 47, at 251 (James Madison) (Gideon Ed.2001), quoting Montesquieu, *The Spirit of Law* 181 (1748). "Each branch of government 'can exercise such power and such only, as falls within the scope of the express delegation.'" *TWISM Ents.* at ¶ 32, quoting *Scovill v. Cleveland*, 1 Ohio St. 126, 134 (1853).

{¶14} Federal courts, not the least of which is the United States Supreme Court, have had occasion to offer insight into these roles while discussing the separation of powers doctrine. For instance, the Supreme Court of the United States has repeatedly emphasized that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." (Citations

Case No. 2025-T-0086

omitted.) *United States v. Batchelder,* 442 U.S. 114, 124 (1979); *see Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).

{¶15} Correspondingly, "judicial authority is . . . at its most limited" when reviewing the executive's exercise of discretion over charging determinations. (Citations omitted.) *Community for Creative Non-Violence v. Pierce,* 786 F.2d 1199, 1201 (D.C.Cir. 1986); *see also Interstate Commerce Comm. v. Bhd. of Locomotive Engineers,* 482 U.S. 270, 283 (1987). The decision whether to prosecute turns on factors such as "the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan . . . ." *Wayte v. United States,* 470 U.S. 598, 607 (1985). The executive routinely undertakes those assessments and is accordingly well-equipped to implement these determinations.

{¶16} By contrast, the judiciary, as the United States Supreme Court has observed, is generally not "competent to undertake" that sort of inquiry. *Id.* Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir. 1967). "Judicial supervision in this area" would also "entail systemic costs . . . ." *Wayte* at 607. It could "chill law enforcement," cause delay, and "impair the performance of a core executive constitutional function." *Id.*; *United States v. Armstrong*, 517 U.S. 456, 465 (1996). As a result, the "'presumption of regularity'" applies to "prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.'" *Armstrong* at 464, quoting *United States v. Chem. Found.*, 272 U.S. 1, 15 (1926).

Case No. 2025-T-0086

{¶17}   It also bears emphasis that the trial court's reasoning reflected a category error. By examining whether the surrounding circumstances—the 911 call, the argument, the display of a firearm—could support a jury's finding of knowing conduct, the trial court was performing a sufficiency-of-the-evidence analysis. That function belongs to post-conviction review, not pre-trial gatekeeping of prosecutorial discretion. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (sufficiency inquiry asks whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). A trial court assessing whether the prosecution's charging decision meets its own satisfaction at the motion stage is not conducting a preliminary hearing—it is substituting its own prosecutorial judgment for that of the executive, which is precisely the constitutional overreach these authorities prohibit.

{¶18}   With these settled points in mind, Crim.R. 48(A) states: "The [S]tate may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate." Under this rule, the prosecuting attorney, with the court's discretionary permission, has the ability to request "when and which charges should be dropped." *State v. Jones*, 2015-Ohio-1818, ¶ 31 (8th Dist.); *see also State v. Jones*, 2009-Ohio-1957, ¶ 13 (2d Dist.).

{¶19}   As previously observed, "[t]he [trial] court's discretion, however, is limited by the separation of powers—the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the prosecuting attorney." *Cleveland v. Primm*, 2017-Ohio-7242, ¶ 5 (8th Dist.), citing *State ex rel. Master v. Cleveland*, 1996-Ohio-228, ¶ 15 ("the decision whether to prosecute is discretionary, and not generally subject to judicial review"); and *In re United States*, 345 F.3d 450, 454 (7th Cir.

Case No. 2025-T-0086

2003) ("[T]he plenary prosecutorial power of the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches. . . . When a judge assumes the power to prosecute, the number shrinks to two."). "Broadly interpreting the Crim.R. 48(A) leave-of-court requirement could be an invitation for the judiciary to exceed its constitutional role and breach the separation of powers by intruding upon the plenary prosecution power of the executive branch." *Primm* at ¶ 5. The Ohio Supreme Court has similarly recognized that charging decisions are committed to prosecutorial discretion and are not generally subject to judicial control. *State v. Busch*, 76 Ohio St.3d 613, 615 (1996).

{¶20} Considering these observations, we emphasize that courts counsel against utilizing statutes and rules in a manner that would impinge on the executive branch's constitutionally-rooted primacy over criminal charging decisions. Recourse to federal cases construing Fed.R.Crim.P. 48(a) is helpful in developing this discussion.[1]

{¶21} Fed.R.Crim.P. 48(a) requires a prosecutor to obtain "leave of court" before dismissing charges against a criminal defendant. That language might be openly read to permit considerable judicial involvement in the determination to dismiss criminal charges. This reading, however, is not tenable. Decisions to dismiss pending criminal charges— no less than decisions to initiate charges and to identify which charges to bring—are squarely within the realm of prosecutorial discretion. *See, e.g., Newman*, 382 F.2d at 480. To that end, "[t]he Supreme Court *has declined* to construe [Fed.R.Crim.P.] 48(a)'s

---

1. Fed.R.Crim.P. 48(a) provides, in relevant part, that a dismissal may be made: "By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint." The "leave-of-court" requirement of Ohio's Crim.R. 48(A), therefore, tracks the language of the federal rule.

Case No. 2025-T-0086

'leave-of-court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *United States v. B.G.G.*, 53 F.4th 1353, 1361 (11th Cir. 2022), quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C.Cir. 2016); *see also Rinaldi v. United States,* 434 U.S. 22 (1977).

{¶22} Rather, and of significant importance, the "principal object of the 'leave[-]of[-]court' requirement" has been understood to be a narrow one—"to protect a defendant against prosecutorial harassment . . . when the [g]overnment moves to dismiss an indictment over the defendant's objection." (Citations omitted.) *Rinaldi* at 29, fn. 15. A court thus reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of "prosecutorial harassment" of the defendant through repeated efforts to bring—and then dismiss—charges. *Id.*

{¶23} The Fifth Circuit Court of Appeals has also addressed the phrase "leave of court" in relation to the federal counterpart to Crim. R. 48(A). The court stated:

> [I]t seems altogether proper to say that the phrase "by leave of court" in [Fed.R.Crim.P.] 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest.

*United States v. Cowan,* 524 F.2d 504, 513 (5th Cir. 1975).

Case No. 2025-T-0086

{¶24}  Moreover, in *Rinaldi,* 434 U.S. at 29, fn. 15, the Supreme Court of the United States observed,

> The words "leave of court" were inserted in [Federal] Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection . . . But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

{¶25}  Additionally, and germane to the analysis of the underlying appeal, the Eleventh Circuit Court of Appeals has observed:

> The judiciary has a role to play when the government seeks to dismiss a prosecution—but it's a limited one. *See United States v. Bernard*, 42 F.4th 905, 908 (8th Cir. 2022) ("[A]lthough the district court has some discretion in this area, it 'is sharply limited by the separation of powers balance inherent in [r]ule 48(a).'" (quotation omitted)). The "Supreme Court has declined to construe [r]ule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016).

(Bracketed text in original.) *B.G.G.*, 53 F.4th at 1361; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("The purpose of [Fed.R.Crim.P. 48(a)] is to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy.").

{¶26}  Further, in construing the phrase "good cause," the Eighth Appellate District succinctly stated: "While insufficiency of proof has always been regarded as good cause for the nolle prosequi of an indictment[ or charge] . . ., the cases which discuss such a

demonstration of good cause indicate that the [S]tate did not simply recite that the evidence was insufficient, and the [S]tate must state in the record *the nature of the insufficiency*." (Emphasis added.) *Lakewood v. Pfeifer*, 83 Ohio App.3d 47, 51 (8th Dist. 1992) ("*Pfeifer II*") (appeal affirming the judgment issued in *Pfeifer*, 61 Ohio Misc.2d 704, cited by the trial court). Consistent with this statement, the Eighth District held

> that to require the trial court to simply accede to the prosecutor's conclusory assertion of insufficient evidence would completely nullify the "leave of court" and "good cause" provisions of Crim.R. 48(A) and R.C. 2941.33, and would render meaningless any true demonstration of good cause. We hasten to add, however, that if the prosecution had enunciated or the record revealed more than a purely conclusory basis for the nolle, then the requirements for the nolle should be met.

*Pfeifer II* at 52.

{¶27} Two features of *Pfeifer* fundamentally distinguish it from this case and render it inapposite. First, the prosecutor in *Pfeifer* offered no factual basis whatsoever for dismissal—only a bare recitation of "insufficient evidence" without elaboration. Here, by contrast, the State provided a detailed, element-by-element recitation of the evidentiary deficiency: identifying the named victim's denial of fear, her denial of having observed a firearm, the absence of corroboration from two on-scene officers, and the foundational impossibility of proving the "knowing" mens rea element as charged. Second, in *Pfeifer,* the defendant did not join the request for dismissal. Here, both parties agreed that the charge should be dismissed. A motion joined by both the prosecution and the defense implicates none of the "prosecutorial harassment" concerns that the leave-of-court requirement was designed to guard against. *Pfeifer* thus has no analogical purchase on the facts before us.

Case No. 2025-T-0086

{¶28} In this case, the prosecutor provided significantly more than mere conclusory statements to undergird her request for leave to dismiss the aggravated menacing count listing A.H. as a victim.

{¶29} Aggravated menacing, under these circumstances, required proof, beyond a reasonable doubt, that Mr. Glover knowingly caused A.H. to believe that he would cause her or her property serious physical harm. *See* R.C. 2903.21(A); *see also* Municipal Court complaint (Mr. Glover "did knowingly cause [A.H.] to believe that the said Christopher Glover would cause serious physical harm to the person or property of [A.H.]").

{¶30} In seeking leave to dismiss, the prosecutor emphasized that neither C.H. nor A.H. experienced any fear during the encounter with Mr. Glover. Although A.H. (presumably) called 911 due to Mr. Glover's appearance at her residence, the call did not include any factual foundation for an emergency.[2] Although the trial court appears to have treated the 911 call as circumstantial evidence of A.H.'s fear, this inference is undermined by a threshold evidentiary problem: the caller was unidentified and was never confirmed to be A.H. An inference of the named victim's subjective fear cannot be reliably drawn from an anonymous 911 call. It was later determined, however, that A.H. had a civil protection order against Mr. Glover, a violation of which was ultimately filed. According to the prosecutor, A.H. was in the home until officers arrived, and she did not observe, at any point, Mr. Glover flash let alone brandish a firearm. C.H. asserted he did observe Mr. Glover flash the firearm from the pocket of his hoodie; after Mr. Glover did so, however, C.H. stated Mr. Glover left the scene and returned to his friend's residence. And, the State submitted that two, on-scene responding officers could not attest that Mr. Glover engaged

---

2. The 911 caller, while a female, was unidentified.

Case No. 2025-T-0086

in aggravated menacing against A.H. Finally, in its factual recitation to the court in support of its motion for leave to dismiss, the State emphasized that A.H. firmly maintained she neither saw a firearm in Mr. Glover's possession nor was in fear that Mr. Glover would cause her any harm.

{¶31}  Because A.H. was the only alleged victim in this case, she stated she was not in fear of physical harm (let alone serious physical harm) from Mr. Glover, *and* she did not observe Mr. Glover with a firearm, we conclude there was "good cause" for the State to seek leave to dismiss the aggravated menacing charge against him. In other words, the State fundamentally demonstrated it lacked sufficient evidence to prove beyond a reasonable doubt that Mr. Glover knowingly caused A.H. to believe he would cause her serious physical harm (or any such harm to her property). The trial court erred in denying the State leave to dismiss that charge under Crim.R. 48(A). Applying the governing standard articulated in *Cowan*, there is nothing in this record suggesting that dismissal would be "clearly contrary to manifest public interest." 524 F.2d at 513. To the contrary: the named victim denied both the fear and the observation of a weapon essential to the charge, the defendant joined the motion, and both on-scene officers declined to attest to the conduct alleged. No cognizable public interest is served by compelling prosecution of a charge whose foundational element the alleged victim herself refutes.

{¶32}  This conclusion is further reinforced by Ohio's constitutional guarantee of victims' rights. Ohio Const. Art. I, § 10a (Marsy's Law) affords crime victims the right to be heard and to be treated with fairness throughout criminal proceedings. A.H.—the only named victim in this case—not only declined to support the prosecution but affirmatively represented that she experienced no fear and did not observe a firearm. Compelling

Case No. 2025-T-0086

prosecution of a charge over the unambiguous objection of the sole named victim inverts the very framework Marsy's Law was designed to establish. It serves neither justice nor the victim herself.

{¶33} That said, the trial court essentially advised the State, at the November 13, 2025, pretrial hearing, that it *could* amend the charge to allege C.H. as a victim. Although this point is tangential to the issue before us on appeal, it also invokes a separation of powers concern.

{¶34} We caution a judge (a member of the judicial branch of government) against advising a prosecutor (a member of the executive branch of government), who has plenary power to exercise discretion to charge or allege criminal malfeasance, to supplement or amend a charge. *See In re United States*, 345 F.3d at 454 (when a judge takes the role of prosecutor, the tripartite and co-equal powers of the government reduce to two therefore eliminating the prosecution's plenary discretionary power to charge a crime).

{¶35} Lawyers, let alone judges, take an oath to uphold the constitution. This fundamentally embraces upholding the well-established concept of a separation of powers in government. By virtue of this oath, and the rules of judicial conduct (*see, e.g.,* Jud.Cond.R. 1.2, requiring judges to act in "a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and [to] avoid impropriety and the appearance of impropriety"; s*ee also* Jud.Cond.R. 2.6 (requiring judges to accord every person who has a legal interest in a proceeding the right to be heard according to law—a principle that implies judicial neutrality as to how proceedings are conducted, not active steering toward outcomes the court personally prefers)), a judge *must* avoid

Case No. 2025-T-0086

potential trespasses onto the executive branch's domain. A judge has a legal and ethical duty to respect the role of the executive branch in charging an individual with a crime. As emphasized, prosecutorial discretion resides in the executive branch, not in the judicial branch. While that discretion is subject to review (to *protect* a defendant's constitutional rights), it is not unlimited, and it is not the judge's role to exhort or even advise a prosecutor in the manner that the executive officer elects to exercise his or her discretion.

{¶36} The prosecutor could decide to charge Mr. Glover with aggravated menacing against C.H. That decision, however, is not within the trial court's bailiwick or even potential authority. The charge in *this* matter was *against* Mr. Glover *against* the alleged victim, i.e., A.H. Given the State's representations of fact on record, good cause existed for the trial court to enter a nolle prosequi on the aggravated menacing charge against A.H. The trial court, in recognition of the essential lack of evidence, should have granted the State's motion. Moreover, the trial court, in the interest of remaining neutral and not creating an appearance of impropriety, as well as upholding and respecting the separation of powers doctrine, should have refrained from commenting or advising the State regarding any amendment to the underlying charges.

{¶37} The State's assignment of error is with merit.

{¶38} The judgment of the Warren Municipal Court is reversed.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is with merit. It is the judgment and order of this court that the judgment of the Warren Municipal Court is reversed.

Costs to be taxed against the parties equally.

_____
JUDGE EUGENE A. LUCCI

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.